## HARTLEY v. STATE ROAD COMMISSION et al.

No. 3239.   Decided July 11, 1918.   (174 Pac., 639.)

HIGHWAYS—STATE AID—POWERS OF COMMISSION—STATUTES—CONSTRUCTION.   Under Laws 1917, c. 32, Section 1, authorizing state bond issues for road improvement, sections 6, 7, authorizing the State Road Commission to expend moneys so derived on such roads as it deems best, and chapter 38, appropriating $100,800 for the general revenues for each of the years 1917, 1918, and succeeding years, "and such other revenues as may be by law provided," and making such sums available equally to all counties, and requiring counties of the third class to duplicate amounts so appropriated to them, the road commission did not exceed its authority when, after distributing the 1918 appropriation, it authorized the use of $50,000 derived from bonds on roads of Davis, a third class county, which had raised only $38,000 for the work, since the statutes are not in conflict; one relating to general revenues and the other to bond issues.

Original proceeding in prohibition by Georgia B. Hartley against the State Road Commission and Simon Bamberger and others, as members thereof.   On demurrer of the Attorney General to the petition.

Demurrer sustained, alternative writ vacated and set aside, and petition dismissed.

*Allen T. Sanford* for plaintiff.

*Dan B. Shields,* Atty. Gen., and *O. A. Dalby* and *H. Van Dam, Jr.,* Asst. Attys. Gen., for defendants.

McCARTY, J.

Plaintiff, a resident and taxpayer of Salt Lake County, Utah, applied for and obtained an alternative writ of prohibition against the State Road Commission and its members. Plaintiff, in her affidavit filed in support of her application for the writ, recites that:

"On the 20th day of June, 1918, the defendant State Road Commission, at a regular meeting of the said commission, passed the following resolution:

" 'Whereas, the State Road Commission of Utah is about to make some road repairs and do road construction work in Davis county, and

" 'Whereas, the commissioners of Davis county have appropriated the sum of $38,000.00, and

" 'Whereas, the duplication of this amount of money would leave insufficient amount of money to do the work contemplated by the said State Road Commission of Utah, and

" 'Whereas, there are available funds which may be applied towards the defrayal of the expense of such construction work, to wit, funds to be derived from the sale of bonds under the authority of chapter 32, Session Laws of Utah 1917, "An act providing for the issuance and disposal of state bonds," etc.,

" 'Now therefore, be it resolved by the State Road Commission of Utah, that the sum of $50,000 is hereby appropriated from the funds to be raised by the sale of bonds under the provisions of chapter 23 (32), Laws of Utah 1917, which shall be placed in a fund consisting of $38,000 raised by Davis County and this sum to be expended in the construction and repair of certain state roads in Davis County, Utah.' "

Plaintiff further recites:

"That by said resolution the said State Road Commission

has declared its intention to expend $50,000 out of the money to be raised from the sale of bonds under the provisions of chapter 32, Laws of Utah 1917, on the state roads of Davis County, Utah, while said Davis County contributes only $38,000, and, unless prohibited, it will expend said sum on the state roads of Davis County; that Davis County has an assessed valuation of $11,129,000, and is a county of the third class, and in accordance with the provisions of chapter 38, Laws of Utah 1917, Davis County is required to duplicate the full amount of the funds set aside by the State Road Commission to be expended in said county; and further affiant is informed and believes that $50,000 is more than the pro rata quota to which Davis County is entitled out of the said funds provided for in chapter 32 and chapter 38, Laws of Utah 1917, and that by the expenditure of said sum of $50,000 on the state roads in Davis County, by the said State Road Commission, out of the state road funds, other counties will be deprived of their pro rata proportion of said funds, and will be deprived of any of said funds for road building and improvement.''

The Attorney General, appearing for the State Road Commission, interposed a demurrer to the petition on the ground that it ''does not state facts sufficient to constitute a cause of action.''

The issues presented by the petition and demurrer involve the construction of certain provisions of chapter 32 and of chapter 38, Session Laws of Utah 1917.

Section 1 of said chapter 32 provides, so far as material here, that:

''The State Board of Loan Commissioners is hereby authorized to provide for and negotiate, as needed for the purposes in this act provided, a loan for the state in the sum of two million dollars, by issuing negotiable coupon bonds of this state therefor under rules and regulations not in conflict herewith to be prescribed by said board.''

Section 6 provides, in part, that the proceeds of the sale of the bonds ''shall be covered into the state treasury, and the same shall be appropriated and used exclusively for the con-

struction, maintenance and repair of state roads and the building of bridges thereon; and said treasurer shall pay out said moneys so received, * * * at the order of the State Road Commission, subject to the approval of the State Board of Examiners.''

Section 7 reads:

''Said money received from the sale of said bonds shall be apportioned and spent by the said State Road Commission upon such roads and bridges as by it deemed best.''

Chapter 38, Session Laws 1917, provides, so far as material here, as follows:

''There is hereby set apart as a state road fund, from the proceeds of the sale of bonds authorized by an act of the Legislature of the state of Utah, entitled, 'An act providing for the issuance and disposal of state bonds, and appropriating the proceeds of the sale thereof for the construction, maintenance and repair of state roads and the building of bridges thereon, and providing a fund for the payment of interest on and the redemption of said bonds,' approved March 2, 1917, the sum of $100,800 for the calendar year 1917 and $100,800 for the calendar year of 1918, *and there is hereby appropriated and set apart from the general revenues of the state for the year 1919 and for each succeeding year thereafter the sum of $100,800 annually, and such other revenues as may be by law provided.* Such funds shall be available for the construction and maintenance of state roads in each county of the state in equal proportions, or as otherwise provided in this act; provided, that before any part of such fund shall be so available in any county in this state, counties of the eleventh, twelfth, thirteenth, fourteenth and fifteenth classes are required to duplicate one-fourth of the amount of such fund so set apart for use in such counties; and counties of the ninth and tenth classes to duplicate one-half of the amount of such fund so set apart for use in such counties; and counties of the first, second, third, fourth, fifth, sixth, seventh and eighth classes, to duplicate the full amount of such fund so set apart for use in such counties.''

It is stipulated:

"(1) That the $100,800 of the bond money provided for in chapter 32, Laws of Utah 1917, has been distributed to the counties equally and expended on state roads in such counties equally.

"(2) That the $50,000 which it is proposed shall be appropriated to the state roads of Davis County arises out of the sale of bonds and is in excess of the said sum of $100,800."

Petitioner contends that Davis County, being a county of the third class, must, under chapter 38, duplicate the $50,000 set apart by the State Road Commission for use in repairing and constructing roads in that county before any part of the $50,000 of state funds can be used on the roads in Davis County. The Attorney General, on the other hand, contends that section 7 of chapter 32, Session Laws 1917, herein set forth, placed under the control of the commission the money "received from the sale of bonds, to be apportioned by them on the roads and bridges of the various counties in the state as they shall see fit," and that chapter 38 is in the nature of a special act "which provides, not for the general maintenance and repair of roads as contemplated by chapter 32, but for the distribution to the counties in equal proportion the sum of $100,800 for each of the calendar years 1917 and 1918, and that when this amount of money has been taken from the bond fund, * * * the remaining money in the said fund is under the supervision and control of the State Road Commission to be distributed" as provided by section 7 of the act.

We think the construction of the provisions of the statute referred to contended for by the Attorney General is sound. The provisions of chapter 38 are not in conflict with chapter 32 as petitioner seems to contend. It will be noticed that chapter 38 specifically provides that $100,800 of the proceeds of the sale of bonds authorized by chapter 32 shall be used for the "construction, maintenance and repair of state roads and the building of bridges thereon" for the calendar year 1917 and a like amount for the calendar year 1918. By referring to the part of chapter 38 which we have italicized, it will be observed that for the year 1919, and succeeding years

thereafter, $100,800 is "appropriated and set apart from the general revenues" of the estate and "such other revenues as may be provided by law * * * for the construction and maintenance of state roads in each county of the state in equal proportions, or as otherwise provided" in the act. And, as pointed out, section 7 of chapter 32 provides that the money received from the sale of bonds (less the $201,600 appropriated and set apart for the calendar years 1917 and 1918 as provided in chapter 38) shall be apportioned and spent by the State Road Commission upon such roads and bridges as it may deem for the public interest. The State Road Commission, therefore, did not offend against the statute nor exceed its authority by passing and carrying into effect the resolution authorizing the expenditure of the $50,000 mentioned on state roads in Davis County.

The demurrer is sustained, and the alternative writ of prohibition heretofore issued is vacated and set aside. It is further ordered that the affidavit and petition of plaintiff be, and the same are, hereby dismissed.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.