# LIVINGSTON v. MILLARD COUNTY DRAINAGE DIST. NO. 3 et al.

No. 3680.     Decided June 29, 1921.     (199 Pac. 661.)

DRAINS—SUPERVISORS OF DRAINAGE DISTRICT CANNOT DISPOSE OF BONDS TO CONTRACTOR FOR LESS THAN THE SALE PRICE FIXED BY STATUTE. Although Laws 1919, c. 41, authorizing the organization of drainage districts, provided for the issuance of bonds which should not be sold for less than 90 per. cent. of the par value, further provides that in case no bid is made and accepted the board of supervisors may use the bonds for construction of any ditches or drains, the board cannot, being unable to sell bonds at 90 per cent. of the par value, arrange that the contractor should for work done receive bonds at 80, and for work to be done should accept unsold bonds and notes with the understanding that, if he was unable to dispose of the bonds for sufficient to pay for the work, the district should be liable on the notes, etc., for that would entirely evade the purpose of the statute not to permit sale of the bonds for less than 90 per cent. of the par value.

Original application by W. R. Livingston for writ of prohibition against Millard County Drainage District No. 3 and others, its Board of Supervisors.

PEREMPTORY WRIT ISSUED.

*J. A. Melville, Jr.,* of Salt Lake City, for plaintiff.

*Soule & Spalding,* of Salt Lake City, for defendants.

FRICK, J.

The plaintiff, as a taxpayer in drainage district No. 3 of Millard county, this state, makes this application for a writ of prohibition. In his application, after stating that the individual defendants are the officers of said drainage district, he asks that they be prohibited from disposing of certain drainage bonds issued by said drainage district. He, in substance, alleges: That said drainage district is a duly organized drainage district; that in the year 1917 bonds of the par value of $1,250,000 were issued and sold by said district, the proceeds of which were applied to construct a drainage system in said district; that with the proceeds aforesaid only 85 per cent. of said drainage system could be completed, leaving 15 per cent. thereof uncompleted; that to fully complete said drainage system an additional issue of bonds in the amount of $440,000 was duly issued by said district; that after duly advertising for bids for the sale of said $440,000 bonds no bids were received offering to pay the amount which the statute specifies that the same may be sold for; that in constructing said drainage system said district became and is now indebted to a certain contractor in the sum of $75,000 for labor and materials furnished by him in the construction of the uncompleted drainage system aforesaid; that the individual defendants, as officers of said district, have agreed with said contractor to deliver to him, and, unless prohibited, they will deliver to him, a certain number of said bonds at the agreed price of 80 cents on the dollar of their par value, or 20 per cent. less than par, as part payment of the amount said district is indebted to him; that in addition thereto the officers aforesaid have entered into an agreement with said contractor whereby he has agreed to complete the uncompleted portion of the drainage system upon the following terms and conditions: That in settlement for the cost of completing the uncompleted 15 per cent. of said drainage system said officers have agreed to and, unless prohibited, will deliver to said contractor the negotiable promissory notes of said district, and to secure payment thereof will deliver to him the remainder of said $440,000 of bonds with the understanding that in case such promissory notes are not paid when

due said contractor shall have and is given the right to offer said bonds either at public or private sale and may sell the same at such sale, or at a forced sale if necessary, at such price as he may receive therefor, and that in case said bonds shall not sell for a sufficient amount to pay the. amount due to said contractor said drainage district shall be liable to him for any deficiency. The plaintiff further alleges that the agreement to dispose of said bonds as aforesaid is contrary to the provisions of the statutes of this state and is wholly unauthorized by law. He therefore prays that said defendants may be prohibited from delivering said bonds and from complying with the terms of said agreement.

The complaint contains many allegations and statements that are immaterial, and to which no further reference will be made.

The defendants appeared and have interposed a general demurrer to plaintiff's application. At the hearing the whole matter was submitted upon the demurrer aforesaid. The question, therefore, is: Does the application state facts sufficient to authorize this court to prohibit the disposition of the bonds in the manner hereinbefore stated?

Our statute (chapter 41, Laws Utah 1919) authorizes the organization of drainage districts and provides for the raising of funds to construct drainage systems either by levying taxes or by issuing bonds of such districts. In case it is sought to issue bonds, elections must be called and held as provided in the statute authorizing the issuing of such bonds. In case bonds are authorized by the voters of the district, the statute provides that bonds of the district may be issued and which shall—

"run not less than five years nor more than forty years, and to bear interest payable semi-annually at a rate not exceeding 6 per cent. per annum, to be called 'drainage district bonds,' *which said bonds shall not be sold for less than 90 per cent. of their par value,* and the proceeds of which shall be used for no other purpose than paying the cost of constructing such drains, drainage canals, or other like work deemed necessary to drain lands within said district." (Italics ours.)

It is also provided that the bonds may be sold at either

public or private sale, and that notice offering the bonds for sale shall be duly published for the time specified in such statute.  The statute, after providing that the bonds shall be sold "to the highest responsible bidder," further provides:

"In case no bid is made and accepted as above provided, the board of supervisors is hereby authorized *to use said bonds for the construction* of any ditches, drain or drains, drainage canal or drainage canals, or any other required improvement deemed necessary to drain lands or for the public health or welfare."  (Italics ours.)

It is conceded that the defendants have made diligent efforts to sell said bonds for cash or to dispose of them at 90 per cent. of their face value to raise funds to complete said drainage system, and that after having done so have been unable to sell or to dispose of them at such price or at any price other than hereinbefore stated.  It is also conceded that all the parties have acted and are proceeding in good faith in the premises.  It is further suggested that all of the owners of land in said district are obligated to pay the bonds already sold, that 15 per cent. of the drainage system remains uncompleted, and that the lands within the area of said 15 per cent. remain in an unproductive condition by reason of lack of drainage, and that apparently there is at present no way open to complete said drainage system except by disposing of said bonds to the contractor upon the terms and conditions hereinbefore stated.

Plaintiff, however, insists that the proposed disposition of said bonds is unauthorized and is contrary to the provisions of the statute.  Upon the other hand, the defendants insist that under the terms of the statute, if the drainage bonds cannot be sold for cash, they may, nevertheless, be used for the purpose stated in the statute.  The word "used," they insist, is a very comprehensive term, and the authority that is given to use said bonds contemplates the disposition that is sought to be made of them as hereinbefore stated.

While it must be conceded that the language that the board of supervisors is "authorized to use said bonds" is very broad, yet that language must be considered and construed in connection with all that is said in the entire act upon the subject of the sale or disposition of the bonds.  If the lan-

guage giving the authority to use the bonds, as before stated, stood alone, no doubt the contention of the defendants would be difficult to meet. The language of the statute is, however, also explicit that ''said bonds shall not be sold for less than 90 per cent. of their par value.'' The purport of that language is imperative and mandatory, while the language authorizing the use of the bonds in case no bids for a cash sale are received is permissive rather than mandatory. No doubt in case no bid for the amount stated in the statute is received the supervisors may use the bonds for the purpose before stated. In our judgment, the right to so use them is, however, not entirely without qualification. If that were so, and the word ''use'' were given its literal and most expansive meaning and application, the bonds could still be used, although they were disposed of at 25 per cent. of their face value, or for even less. Moreover, we would be compelled to construe the statute as though it read that the supervisors are ''authorized to use said bonds upon such terms and upon such conditions as to them may seem reasonable and proper.'' In other words, the authority to use and to dispose of the bonds would be plenary and without any limitations whatever except that they be used for the purpose stated in the statute. Manifestly such could not have been the intention of the Legislature in conferring the power to use the bonds in case no cash bid was received for which they might be sold under the statute. In view, therefore, that the statute is imperative that the bonds may not be sold for less than 90 per cent. of their face value, that limitation must be kept in mind when some other disposition or use is made of them.

It is quite clear that the Legislature intended that in case bonds could not be sold for cash for 90 per cent. of their face value and some one was willing to take them at that price in payment for labor or materials, or both, they might, nevertheless, be used for that purpose. Again, a contractor might offer and agree to take the bonds at 90 per cent. of their face value in payment of his contract, and, if that were so, the bonds could be used in payment of the contract price. One can readily understand why that might be so. While no one

might be found at the time the bonds were offered for sale who would be willing to pay 90 per cent. of their face value and pay that amount in cash, a contractor might, nevertheless, be willing to take them at that price in the hope or expectation that the bond market might improve within a comparatively short time, or at least within a reasonable time, and such hope or expectation might be based upon sound reason. The bonds could therefore still be used without departing from the express purpose and intent of the Legislature that they should not be sold for "less than 90 per cent. of their par value." If any other construction be placed upon the language of the statute, when all that is said is considered in pari materia, it inevitably follows that, in case no one bids 90 per cent. of the par value of the bonds, they may be used, disposed of, at any price. If the statute were given that meaning, why should any one offer to pay 90 per cent. of the par value of the bonds in cash? Any one desiring the bonds could refrain from bidding for them and could then agree to advance money to the district to construct the drainage system and receive its promissory notes as evidence of the indebtedness, which notes could be secured by the bonds, which, in case the promissory notes were not paid when due, might be sold at any price, and the holder of the notes could thus collect 100 per cent. of the amount due on such notes, the district being liable for any deficiency which would not be covered by the amount received from the sale of the bonds. If in this case the drainage district officers, immediately after the time for receiving bids had expired, and no bids had been received, had offered to sell the bonds either at public or private sale for any price they could obtain for them with the intention of using the proceeds to pay the contractor, no one, we think, would hesitate to say that they had exceeded their authority. Yet that would be using the bonds for the purpose contemplated by the statute. If, however, the agreement with the contractor as hereinbefore stated is carried out, then the officers in legal and practical effect are doing just what we have stated above.

We are clearly of the opinion, therefore, that by entering

into the agreement with the contractor to dispose of the bonds as contemplated by said agreement the officers of the drainage district, the defendants herein, are exceeding the authority conferred upon them by the statute. In arriving at the foregoing conclusion we have not been unmindful of the conditions prevailing in the drainage district and that perhaps much inconvenience and some hardships will result from our conclusion. Such inconvenience and hardships, however, if any, are no excuse for transcending the powers that are conferred upon us as a court. While all of the foregoing matters would afford cogent reasons why the Legislature should change the act so as to afford relief, they can be given no consideration here.

For the reasons stated, a peremptory writ of prohibition as prayed should issue. Such is the order.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.