ATWOOD v. COX, District Judge.

No. 5701. Decided March 11, 1936. (55 P. [2d] 377.)

438

*H. L. Mulliner* and *Marion G. Romney*, both of Salt Lake City, for plaintiff.

*George B. Stanley*, of Heber, for defendant.

WOLFE, Justice.

This is an application for a writ of prohibition in regard to which an alternative writ was issued. The question is, Shall it be made permanent? The basis for the application was that the amended accusation and complaint does not state a cause of action, and that therefore the trial court is without jurisdiction to proceed to try the case on its merits. So much of the substance of the amended accusation and complaint by J. C. Tuft and Wm. C. Crook, plaintiffs, against John L. Atwood, defendant, as is necessary to under-

stand the points herein decided is hereunder stated: Defendant Atwood was since January, 1933, a member of the board of education of the Wasatch county school district. That he was paid the maximum annual salary of $150 in monthly installments of $12.50 each. That he had received all salary due him up to and including the month of April, 1935. That on December 18, 1933, he presented to the board of education of the Wasatch county school district a claim in the aggregate sum of $6.17, consisting of the following items:

| Nov   | Visiting Charleston School ½ day | 2.00 |
| Dec 5 | Visiting school route ½ day      | 2.00 |

That said fees are in excess of the maximum salary allowed by law to the defendant, and that by reason thereof he knowingly, willfully, and corruptly charged the said board of education a fee in excess of the maximum salary allowed for services rendered as a member of said board of education. That said fees were paid.

In the second cause of action it is alleged that on February 8, 1934, the defendant presented to said board of education of said school district a claim in the aggregate of $5.91, which included two items under dates of February 22 and February 26 (the alleged date of presentation appears to be before the dates on which the visits appear to have been made); said items being, respectively, for $2 and $3 for visiting schools. It is further charged that said fees are in excess of the maximum salary allowed by law, and that, by reason of the putting in of said claim, defendant did knowingly, willfully, and corruptly charge the said board of education with a fee in excess of the maximum allowed by law for services rendered as a member of said school board. It is further alleged that the defendant Atwood received payment of said items.

In the third cause of action it is alleged that on November 19, 1934, defendant presented to said board of education a

claim in the aggregate of $19.70, which included three items for visiting schools under dates of November 5th, 9th, and 16th for $2, $4, and $2, respectively, which items were in excess of the maximum salary allowed by law, and that defendant knowingly, willfully, and corruptly charged the said board of education for fees in excess of the maximum allowed by law for services rendered as a member of said board of education; that the defendant received payment of the three items, or a total of $8.

For a fourth cause of action it is alleged that on December 10, 1934, defendant presented to said board of education of said school district a claim in the aggregate of $10.50 for "hauling water to Charleston School—70 days at 15c per day," which was in excess of the maximum salary allowed by law to a member of said board of education, and by reason of which the defendant knowingly, willfully, and corruptly charged said board of education for a fee in excess of said maximum salary; and that the defendant received said money.

For a fifth cause of action it is alleged that on March 18, 1935, the defendant presented to said board of education a claim in the aggregate of $5.40 for "hauling water to Charleston School—36 days at 15c," adding the same allegations as to corruptness and the receipt of the money. To the accusation and complaint were attached, as part thereof, copies of the claims as presented and paid.

The statute under which the complaint was filed is section 105-7-15, R. S. Utah 1933, reading in part as follows:

"When an accusation in writing, verified by the oath of any taxpayer, is presented to the district court, alleging that any officer within the jurisdiction of the court has been guilty of knowingly, willfully and corruptly charging and collecting illegal fees for services rendered or to be rendered in his office."

Section 103-1-3, R. S. 1933, reads as follows:

"(3) The term 'corruptly' imports a wrongful design to acquire or cause some pecuniary or other advantage to the person guilty of the act or omission referred to, or to some other person."

On account of the cases of *Burke* v. *Knox*, 59 Utah **596**, 206 P. 711, and *Parker* v. *Morgan*, 48 Utah 405, 160 P. 764, both counsel have proceeded on the theory that the court does not have jurisdiction to proceed in a cause for the removal of an officer where the accusation does not state facts sufficient to constitute a cause for removal. Although the point has not been expressly raised, the writer takes this occasion to examine into that question. A fairly comprehensive statement of the province of a writ of prohibition is contained in 32 Cyc. 598, as follows:

"The writ of prohibition is an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior tribunal properly and technically denominated such, or to an inferior ministerial tribunal possessing incidentally judicial powers, and known as a quasi judicial tribunal, or even in extreme cases to a purely ministerial body, commanding it to cease abusing or usurping judicial functions. A writ of prohibition is a prerogative writ, to be used with great caution and forbearance for the furtherance of justice, and for securing order and regularity in all the tribunals where there is no other regular and ordinary remedy. The legitimate scope and purpose of the writ is to keep inferior courts within the limits of their own jurisdiction, and to prevent them from encroaching upon the jurisdiction of other tribunals. This writ is of English origin, being one of the great common-law prerogative writs long in use."

Mr. High in his work on Extraordinary Legal Remedies enumerates three conditions prerequisite to the granting of a writ of prohibition:

"(1) That the court, officer, or person against whom it is sought is about to exercise judicial or quasi judicial power.

"(2) That the exercise of such power is unauthorized by law.

"(3) That it will result in injury for which no other adequate remedy exists."

Mr. High proceeds to announce the doctrine as follows:

"* * * And the remedy may be invoked against any body of persons or officers assuming to exercise judicial or quasi judicial powers, although not strictly or technically a court."

"The province of the writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but it is

extended to cases where such tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers."

Thus the province of the writ and the limits within which it is confined are in the abstract well stated. An examination of the cases in the various jurisdictions will reveal the fact that there has been much confusion in applying these principles, in some an extension of the purposes of the writ, and in some cases an outright disregard of them. The underlying reason for this is largely a commendable one. In many cases the court applied to has realized that there is serious error in the lower court's rulings, and that it would be inefficacious to permit such court to proceed, perhaps after a protracted trial, only to be reversed on appeal. The courts have felt the necessity of some sort of procedure which in certain cases would permit the review of an interlocutory order or ruling, so as to save unnecessary and needless work. When, coupled with that situation, the lower court is about to make an order which directly affects property or a public officer's property right in his office and no other remedy is available or is quite inadequate, the temptation of the courts to issue the writs, where error rather than lack or excess of jurisdiction precedes the threatened action of the court, is greatly multiplied. As set out above, the province of the writ of prohibition is designed to keep inferior courts or tribunals within the limits of their jurisdiction, but the difficult problem is to determine under some particular state of facts what is jurisdictional. It is in the determination of this question that courts in issuing the writ have become confused or have purposely winked at what is error in order to arrest the court below from proceeding by actions based on obvious error. Many definitions of jurisdiction are given in 15 C. J. 723, § 13. They all mean, fundamentally, the power or capacity given by the law to a court, tribunal, board, body, or officer to entertain, hear, and determine certain contro-

versies. The word is derived from juris dicto, "I speak by the law." It does not mean that the court must speak correctly by the law. What it says may be incorrect. But it means that its judicial action in respect to the matter in regard to which the action pertains must itself be warranted by law. It does not mean that it must act or operate upon a controversy correctly, but it means that the law must permit it to act upon the controversy. Where the law gives the power to entertain a cause, and the pleadings state facts sufficient to show that such a cause is intended or attempted to be brought before the court, the court has jurisdiction to entertain or proceed with it even though the pleading does not state facts sufficient to constitute a cause of action or a crime, as the case may be. It takes a pleading to invoke the jurisdiction of the court, but, if the pleading shows that the cause or controversy relates to a subject-matter over which the court has jurisdiction, then the jurisdiction of the court is effective for the purpose of proceeding with the cause or controversy. However, where jurisdictional facts are required to be alleged in the pleading and are not alleged, or where the complaint or information is so scanty in its facts or so ambiguous or incomprehensible as to make it impossible to ascertain whether the jurisdiction of the court has been invoked, or where the pleading shows on its face that the subject-matter in regard to which jurisdiction is attempted to be invoked is one over which the court has no jurisdiction, then the court has no jurisdiction to go any further than to decide to refuse to take cognizance. It has, at least, sufficient jurisdiction to make that decision. Jurisdiction can never depend upon the merits of the case brought before the court, but only upon its right to hear and decide at all. *Dixon* v. *Russell,* 78 N. J. Law, 296, 73 A. 51. In 17 Standard Encyc. of Proc. at pages 658, 659, it is stated:

"The test of the jurisdiction of the court to grant relief is not whether good cause for granting the relief exists, but whether the tribunal assuming to act had power to enter upon the inquiry in the particular case, or grant the relief for any cause, and this must be

sought for in the general nature of the powers of the court or the general laws defining its jurisdiction. It does not depend upon whether its conclusion in the course of it is right or wrong, nor whether its methods were regular."

Further, at page 661, it is stated:

"Whether a complaint does or does not state a cause of action, is, so far as concerns the question of jurisdiction, of no importance. If the court has jurisdiction over the general subject to which the particular case belongs, the fact that the complaint does not state a cause of action does not go to the jurisdiction; it merely goes to the character of the judgment that should be rendered."

In *Binderup* v. *Pathe Exchange*, 263 U. S. 291, at page 305, 44 S. Ct. 96, 98, 68 L. Ed. 308, the court, Mr. Justice Sutherland speaking, stated:

"Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous or, in other words, is plainly without color of merit."

In the case of *State* v. *Stobie*, 194 Mo. 14, 92 S. W. 191, 197, the court reviews the Missouri cases. We shall quote at length from this decision. The court states:

" 'Of the various definitions of jurisdiction, perhaps the most satisfactory is as follows: Jurisdiction is authority to hear and determine a cause. Since jurisdiction is the power to hear and determine, it does not, as will be pointed out later, depend either upon the regularity of the exercise of that power or upon the rightfulness of the decisions made.'

"In *State ex rel.* v. *Withrow*, 108 Mo. 1, 18 S. W. 41, the writ of prohibition was denied. Gantt, J., speaking for this court, after fully reviewing the proposition involved in that case, correctly and very

tersely thus defined jurisdiction: 'It is this very right to hear, determine, and decide, whether rightfully or wrongfully, that we denominate jurisdiction.' In *Wilson* v. *Berkstresser et al.,* supra [45 Mo. 283], it was ruled: 'If the court, whose action is complained of, acts within its jurisdiction, but simply commits an error, the writ will not lie. It is not to be confounded with a writ of error or of certiorari, and must not be permitted to take their place.' In *State ex rel.* v. *Southern Ry. Co.,* 100 Mo. 59, 13 S. W. 398, Barclay, J., speaking for this court in discussing the subject of a writ of prohibition, thus stated the law: 'Whether the particular facts on which the court proceeds are, or are not, sufficient to justify its *exercise* of jurisdiction, is a question of law, the solution of which either way cannot impair the court's right to apply its judicial power in the premises according to its view of the law and of the facts before it. For instance, where a court has jurisdiction to render judgments, in ordinary civil causes, it would be manifestly improper to issue a writ of prohibition against it on an application alleging that it was about to pronounce such a judgment on a petition which did not state a cause of action, but which the trial court had held sufficient, or because the latter had ruled erroneously that the plaintiff had a legal capacity to maintain the action. A mistaken exercise of a jurisdiction with which the court is, by law, invested does not furnish a sufficient basis for prohibition. Such mistake may be reviewed as other errors; For example, by appeal, but not by a proceeding like this'—Citing *Mastin* v. *Sloan,* 98 Mo. 252, 11 S. W. 558. In *State ex rel.* v. *Scarritt,* 128 Mo. 331, 30 S. W. 1026, it was again announced by this court: 'The writ of prohibition may be invoked to check the use of judicial power when sought to be exerted beyond the lines which the law has marked as the limits for the operation of the power. It may be applied to prevent action by a court in excess of its legitimate authority in a proceeding whose subject-matter falls within the general cognizance of the court, as well as to stay an assumption of power over causes which by their nature are not confided by the law to the court's consideration. But it should not be issued merely to correct some judicial error in ruling on a subject committed to the judgment of the court against which the writ is sought. Still less may it be applied to anticipate a ruling upon a question properly within the authority of the court to decide. The writ cannot rightly be employed to compel a judicial officer, having full jurisdiction over the parties and a cause, to steer his official course by the judgment of some other judge, or to substitute the opinion of another court for his own dealing with topics committed by the law to his decision'—citing *In re New York, etc., Steamship Co.* (1895) 155 U. S. 523, 15 S. Ct. 183, 39 L. Ed. 246. In that same case the distinction between want of jurisdiction, and the mere

omission to state a cause of action in the case where jurisdiction exists, was plainly marked, and it was finally ruled that the remedy of prohibition cannot be called into play, where the court has jurisdiction, merely on the ground that the complaint or petition is defective, even in some substantial particular. [Italics supplied.]  *  *  *

" 'The matter, therefore, compresses itself into the question whether or not a basic subject-matter, over which a court of equity has jurisdiction, was presented to the circuit court for adjudication by the injunction suit; that is, whether a matter was presented which that court has power to deal with, and not whether such a matter was inartificially or defectively presented. In other words, the question is one of jurisdiction and not of pleading, for, if the court had jurisdiction over the subject-matter, it had the power to decide whether the pleadings were or were not properly drawn, and also to decide whether or not the plaintiff was entitled to the relief sought. If a court has the power to act, its jurisdiction is in no wise impaired by the consideration whether it acted in accordance with the law or erroneously. Given the jurisdiction, all else is a mere matter of error, to be corrected on appeal. Or, further illustrated, if the court has jurisdiction over the subject-matter, it has the power to decide whether the petition does or does not state a cause of action, and the mere failure of a petition to state a cause of action, or the defective statement of a good cause of action, in no way affects the jurisdiction of the court.' "

In *State* v. *McQuillin*, 256 Mo. 693, 165 S. W. 713, at page 716, it was stated:

"Each and every of these matters are defects for which by statute (section 1800, R. S. 1909 [Mo. St. Ann. § 770, p. 1000]) a demurrer will lie. The fact that a demurrer will lie to a petition in a case where the court has jurisdiction of the general class of cases to which the particular case attacked belongs is no ground for the issuance of a writ of prohibition. *State ex rel. Fenn* v. *Riley*, 127 Mo. App. 469, 105 S. W. 696; *State* v. *Stobie*, 194 Mo. 14, 92 S. W. 191."

Whether an inferior court has jurisdiction to entertain an indictment depends on whether the circumstances alleged therein show a punishable offense, and the technical sufficiency of an indictment will not be inquired into. It was said in *State ex rel. Robinson* v. *Durand*, 36 Utah 93, 104 P. 760, 762, that:

"It must be conceded that the justice's court, had subject-matter jurisdiction, and that it also had acquired jurisdiction of the person

of the defendant. Now section 3724, the section under which the defendant invoked the action of the justice's court, provides that an action may be dismissed without prejudice 'when upon the special appearance of the defendant, it is found from affidavits filed by either party, that the action is brought in the wrong county, precinct or city' * * *

"It cannot be said that if the court correctly decides a question he is acting within his jurisdiction, but if he erroneously decides it and determines it contrary to the evidence he is acting without jurisdiction. If it should be said that the justice was here acting without jurisdiction because he decided the motion contrary to the facts, as made to appear by the affidavit, it could as well be said that a justice would be acting without jurisdiction if in the trial of a cause he should render a judgment in the very teeth of the evidence. We are therefore of the opinion that the ruling which the justice made did not affect his jurisdiction. If the ruling was made contrary to the facts as made to appear by the affidavit, it would only constitute error which was subject to correction on appeal, or, in the language of the statute, 'by means of a writ of prohibition' at the instance of the party aggrieved. The fact that the ruling was made reviewable, we think, conclusively shows that it was not intended to be jurisdictional."

In *Harries* v. *McCrea,* 62 Utah 348, 219 P. 533, 539, it was stated:

"Prohibition will lie only in case a court is clearly acting without or in excess of jurisdiction of the subject-matter, and where there is not a speedy or adequate remedy by appeal. The fact, therefore, that the proceedings are grossly irregular or that the pleadings are defective either in form or substance cannot affect the right or power of the court to proceed, if it has jurisdiction of the subject-matter."

In *Ewing* v. *Harries,* 68 Utah 452, 453, 250 P. 1049, 1052, it was stated:

"And in no event can this court determine in a prohibition proceeding the sufficiency of a pleading except for the purpose of determining whether or not the lower court has jurisdiction of the action or proceeding that is sought to be prohibited. When, therefore, this court has reached a conclusion upon the jurisdictional question, its powers respecting its original jurisdiction are exhausted. Whether the allegations of a complaint are sufficient to permit the introduction of evidence or to support a particular finding or judgment comes within the appellate jurisdiction of this court which should be exercised only on appeal from the court having original jurisdiction."

See, also, *State* v. *Hartman,* 221 Mo. App. 215, 300 S. W. 1054; *State* v. *Superior Court of King County,* 30 Wash. 156, 70 P. 230, 73 P. 690; *Haldeman* v. *Davis,* 28 W. Va. 324; *County Court* v. *Boreman,* 34 W. Va. 362, 12 S. E. 490; *Arkle* v. *Board Com'rs,* 41 W. Va. 471, 23 S. E. 804; *Cincinnati, P. B. S. & P. Packet Co.* v. *Bellville,* 55 W. Va. 560, 47 S. E. 301; *Campbell* v. *Durand,* 39 Utah 118, 115 P. 986.

In *Yolo Water & Power Co.* v. *Superior Court of Lake County,* 43 Cal. App. 332, 185 P. 195, in the District Court of Appeal, hearing denied by the Supreme Court, it was held that the sufficiency of the complaint to state a cause of action cannot be tested by the defendant on an application for a writ of prohibition, as the sufficiency of the pleading must be determined by the court in which it is filed. In *State ex rel. Harkness* v. *Gleason,* 187 Ind. 297, 119 N. E. 9, it was held that the lower court having jurisdiction to grant an injunction, if it had jurisdiction of the parties, its judgment granting an injunction would not be void so that prohibition would lie to prevent its enforcement, although the complaint failed to disclose a state of facts warranting the injunction. It was also held that the refusal of the court to grant a change of venue renders the subsequent proceedings erroneous but not void, and that a judgment based upon such proceedings might be appealed from but could not be attacked collaterally. It should be said, however, in connection with this case, that the statute apparently provided for an appeal from an interlocutory order granting a temporary injunction.

In *State ex rel. Bostick* v. *Stark* (Tex. Civ. App.) 203 S. W. 371, it was held, quoting from the headnote:

"Prohibition will not issue to prevent a lower court from entertaining a suit to set aside, for fraud and perjury, a judgment recovered by relator, on the ground that the allegations in the petition in the suit to set aside do not state a cause of action; for such petition is subject to amendment, and to so summarily dispose of the cause of action would be to pass upon its merits without giving the party his day in the trial court."

The case does not clearly reveal whether the lower court had ruled upon the sufficiency of the complaint before the application for a writ of prohibition.

From what has been said above, it seems quite clear that, where the lower court determines that a complaint or information does state sufficient facts to constitute a cause of action or an offense, this court should not review such decision or stay the further proceedings of the court thereon by writ of prohibtion. In many lawsuits, judicial action of the court consists, not only in proceeding with the trial, but in making certain affirmative interlocutory or intermediate orders (or they may be final orders), such as an order appointing a receiver, or appointing an officer or commissioner, or requiring the sale of property, an order removing an officer from his position, an order granting an injunction, an order denying a change of venue, an order granting a change of venue. In many of these instances it will be found that, unless the court is stopped, serious damage may be done without adequate remedy, or at least the inefficaciousness of laterally undoing what might have been timely arrested presents a powerful motive for granting the writ. It is this realization on the part of the courts to whom applications are made for writs of prohibition that has led to decisions which have held such threatened judicial action by the lower court as not authorized in law. We have been unable to find any case which satisfactorily defines the distinction between lack of jurisdiction and excess of jurisdiction. Certainly excess of jurisdiction is lack of jurisdiction in regard to that judicial action which exceeds jurisdiction. It would appear that excess of jurisdiction means a case in which the court has initially proceeded properly within its jurisdiction but steps out of the jurisdiction in the making of some order or in the doing of some judicial act. Assuming this to be the proper meaning of "excess of jurisdiction," affirmative orders by the lower court interlocutorily made on its way to a final decision are

usually the means by which excess of jurisdiction is accomplished.

We shall now proceed to discuss the cases in this jurisdiction wherein it was decided that a writ of prohibition lay, in order to determine whether they are in accord with the principles above stated. The cases of *Law* v. *Smith*, 34 Utah 394, 98 P. 300, *Skeen* v. *Craig*, 31 Utah 20, 86 P. 487, and *Skeen* v. *Chambers*, 31 Utah 36, 86 P. 492, while they involved an accusation brought for the purpose of removing an officer, were all appeals and do not involve applications for writs of prohibition. *Parker* v. *Morgan*, supra, and *Burke* v. *Knox*, supra, were both actions for the removal of officers, and therefore civil and not criminal, but they were both cases in which an application for the writ was made and granted. In the first case, this court directly held that the district court was without jurisdiction to proceed because the acts alleged in the accusation filed against the relator did not come within section 4580, Comp. Laws 1907. In the second case it was held that a writ of prohibition would issue to prevent the district court from entertaining proceedings for the removal of an officer under Comp. Laws 1917, §§ 8625, 8626, and 8637, "where petition for removal does not charge the officer with having committed an offense legally justifying the court in removing him; appeal not being adequate remedy in such case." In neither of these cases did the court make any inquiry as to whether the failure of the accusation, to state facts sufficient to justify a removal, was jurisdictional or a matter of error only.

Going for a moment to other jurisdictions in order to compare rulings in regard to accusation, we find that in the case of *McClendon* v. *Wood*, 125 Ark. 155, 188 S. W. 6, 7, it was held that prohibition would not lie to restrain the court from trying a case for the removal of an officer without a jury because, the court said,

"We are of the opinion that the act of the court in proceeding to trial without allowing a jury, if erroneous, constitutes only an error or an irregularity which must be corrected by appeal."

On the other hand, *McClain* v. *Sorrels,* 152 Ark. 321, 238 S. W. 72, holds that

"The [trial] court has no jurisdiction in a criminal prosecution to order the removal of the officer, unless the indictment charges acts which are sufficient under the Constitution to justify the removal."

In *Harris* v. *Superior Court of Sacramento County,* 51 Cal. App. 15, 196 P. 895, containing the opinion of the Supreme Court upon the refusal to grant a rehearing on the opinion of the District Court of Appeals, it was held that the alleged defect in the indictment was not available as ground for prohibiting the court to proceed with the trial of the cause, citing *In re Ruef,* 150 Cal. 665, 89 P. 605, wherein it was stated:

"We think the true rule is that, where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on habeas corpus."

While habeas corpus, in a sense, is a collateral attack upon the criminal proceeding, the rule laid down in the Ruef Case was adopted in the case of a direct attack in the Harris Case. Moreover, if the case of *In re Evans,* 42 Utah 282, 130 P. 217, is correctly decided, there should be no difficulty in attacking collaterally a judgment based upon a cause of action which it is claimed in such collateral attack did not state a cause of action.

In the case of *State ex rel. Nolan* v. *Clen Dening,* 93 Ohio St. 264, 112 N. E. 1029, it was held that, where a charge is filed against a public official for his removal, and such charge does not constitute misconduct in office under the Constitution of Ohio and the statutes in such case made and provided, such inferior court or tribunal is exceeding its jurisdiction in that behalf and may be enjoined by writ of prohibition if there is no other adequate remedy. It should be noted that the writ of prohibition in Ohio was of recent origin.

In the case of *Beavers* v. *Armistead,* 156 Ga. 833, 120 S. E. 526, it was held that: "If the charges against the defendant fail to state a case, the officer can take advantage thereof by a demurrer, or motion to dismiss, or by objection to evidence, or otherwise; and, should the committee make rulings adverse to him, he has an adequate remedy to review the rulings by certiorari" to prevent the police committee, appointed under the charter and ordinance of the city of Atlanta, from trying a police officer, on the ground of lack of jurisdiction or in excess of jurisdiction.

In the case of *Edson* v. *Superior Court of Siskiyou County,* 98 Cal. App. 367, 277 P. 194, it was held that:

"Prohibition is proper remedy, where trial court overrules demurrer to an accusation which does not state facts sufficient to constitute cause of action."

It should be noted, however, that no appeal lay from the proceedings had before the lower court to remove a public officer for willful or corrupt misconduct in office. The judgment of the trial court was final without appeal. The same result was reached in the case of *Rose* v. *Superior Court in and for Imperial County,* 80 Cal. App. 739, 252 P. 765, for the same reason.

It thus appears that our court and some other courts have in some instances, in spite of the general principle that the inadequacy of an accusation, complaint, or information cannot be tested on an application for a writ of prohibition, issued the writ on the theory that a pleading which failed to state a cause to justify the action asked for was jurisdictional. In California there is some confusion because no appeal lies from the the judgment of the court in a proceeding for the removal of an officer, and, moreover, in California certain interlocutory orders apparently may be reviewed by a writ of review, and the court there has said that, where the record is before the court, an application for a writ of

prohibition will be treated as a writ of review. See *Surmda* v. *Superior Court*, etc. (Cal. App.) 266 P. 843, 844. It was held in this case that:

"Where a complete record of case as affecting points in dispute is presented, and it appears that petitioner is entitled to remedy afforded by writ of review, that relief will be granted, though petitioner has asked only for prohibition."

See, also, *A. G. Col. Co.* v. *Superior Court in and for Santa Clara County*, 196 Cal. 604, 238 P. 926; *Traffic Truck Sales Co. of California* v. *Justice's Court of Red Bluff Tp.*, 192 Cal. 377, 220 P. 306.

There are two other cases in this jurisdiction where the court evidently held that the erroneous finding of the lower court regarding the sufficiency of the pleading and the sufficiency of the evidence to sustain an allegation were jurisdictional. We refer to the case of *Oldroyd* v. *McCrea*, 65 Utah 142, 235 P. 580, 40 A. L. R. 230, and the case of *Benson* v. *Rozzelle* (*Rozzelle* v. *Third Judicial District Court*), 85 Utah 582, 39 P. (2d) 1113, 1118. In the latter case this court held that there was no evidence to sustain a three-party partnership in which plaintiff had an interest, and, consequently, the "finding of the existence of a partnership vested in the court no power either to dissolve a partnership that did not exist or to order an accounting." The court said: "It necessarily follows that, there being no partnership, the court had no jurisdiction to order an accounting." The court therefore held that a finding that there was a partnership without sufficient evidence was more than error, but was jurisdictional, and the court could not proceed further in the case on the basis that there was a partnership.

If this is the law, it is difficult to see why any issue as to status or relationship of parties erroneously found without sufficient evidence or on no evidence is not jurisdictional. If such is the case, then when the court finds interlocutorily a fact along the passage of the trial not supported

by evidence, it would ipso facto deprive the court of any further warrant in law to find the subsequent issues. It is submitted that a finding by the court on a matter it has jurisdiction of without evidence is error and not in any way jurisdictional. The court still had the power to speak by the law in regard to the issue which it decided, even though it decided it erroneously and without evidence to support the finding. A finding without evidence as to a matter it has jurisdiction of does not unhorse it of jurisdiction. In the Oldroyd Case the court held that the allegation in the petition for the issuance of receiver's certificates did not show a necessity to issue them and that the court was unauthorized upon such petition to issue certificates for any purpose and make them first liens over prior existing liens. It then went on to hold that in a later hearing in such receivership the order of the court previously made permitting the issue of the certificates, being unauthorized, showed an excess of its jurisdiction in such particular, and that therefore the petition for the sale of the property free from all existing liens in order to satisfy the receiver's certificates was itself not authorized; the court not having jurisdiction. It was held that the order permitting the receiver's certificates to issue, having been based upon a petition which did not state facts to justify such issuance, was void and could be attacked in a later proceeding in the same cause where it was sought to resist the petition requesting the sale of the property free of liens.

The power to do a judicial act must always underlie the doing of it. Where the court decides it has the power and thus assumes to exercise it, such ruling may be reviewed on an application for the writ. Where the power depends upon the existence of certain facts, and those facts do not appear in the pleading asking that the power be revoked, and it appears that the court acted without such jurisdictional facts, the writ will lie. It is the distinction, on the one hand, between the cases where the court has jurisdiction of a general subject-matter and the pleading in any

particular case brings before it that subject-matter in some form, although the pleading is deficient in facts necessary to state a cause of action or an offense, and the cases, on the other hand, where the court is about to do some affirmative act, usually of an interlocutory nature, which affirmative act is itself dependent upon a power independently of the general power to hear and decide the case before it, or, if incidental to the general power, yet dependent for a capacity to act upon the existence of certain facts, which the courts have usually ignored or confused. Where the judicial act of the court depends, not upon its general plenary jurisdiction, but upon special statutory authority, such as the appointment of a receiver, it may be that the jurisdictional facts must appear according to the rule laid down earlier in this opinion. But, where the receiver is lawfully appointed, and the court, therefore, has jurisdiction to control his action and affirmatively to permit or order him to do certain acts in pursuance of his carrying on in the name of the court, it seems less clear that a petition to the court requesting that it order its officer to do such an act as to issue certificates and to borrow money, where the petition does not state facts sufficient to show the situation wherein the court should so order its officer to proceed as requested, would fail to invest the court with jurisdiction. It would seem, on principle, that, where the court has jurisdiction of the general subject-matter, which in such particular instance is the matter of issuing certificates or permitting money to be borrowed, the failure of the petition to state facts sufficient to cause the court to move in that regard should be exactly in the same category as a complaint which failed to state facts sufficient to constitute a cause of action but stated facts sufficient to show a subject-matter over which the court had jurisdiction. That the courts have been vaguely troubled by a sensing of this inconsistency and the failure of any scientific demarkation in the various situations which arise is shown by the language in *State ex rel. Boston & M. Consol. Copper & Silver Min. Co. v. Second*

*Judicial District Court of Silver Bow County*, 22 Mont. 220, 56 P. 219.  At page 224 of 56 P., the court says:

"Extreme necessity should usually be apparent before this extraordinary remedy will be granted; * * * but, to find out whether such a necessity exists, it is not beyond the power of the superior court to ascertain if any evidence was before the inferior court upon which it assumed the power to act, to the end that it may say not whether the power was discreetly or wisely exercised, but to determine whether the power existed at all. We may illustrate in this way: Ordinarily, a receiver in an action before judgment therein cannot be appointed by a court without notice of the application for such an appointment to the adverse party, unless it shall appear to the court that there is immediate danger that the propery or fund will be removed beyond the jurisdiction of the court, or lost, or materially injured, destroyed, or unlawfully disposed of. Suppose a plaintiff applies for a receiver in his action for equitable relief, gives no notice, and relies upon the ground that there is the immediate danger mentioned in the statute; suppose, though, oral testimony is heard to support the averments of his complaint at an intermediate stage of the case, and in support of his application for a receiver, but the proof offered fails entirely to show immediate or any danger, yet the lower court has gone ahead, and has said that it does satisfactorily appear that immediate danger does exist, and is about to act by the appointment of a receiver. What then is the position of the lower court? It has jurisdiction of the subject-matter of the action, and the nature thereof, and of the parties to it. Furthermore, it had the power under the law, apparently, to appoint a receiver pendente lite in such a suit, under the averments of the complaint, but not under the evidence. Must the superior court decline, under such extraordinary circumstances, to issue the writ of prohibition, because there was jurisdiction and apparent power in the lower court? To determine jurisdiction, will it not inquire whether there was any evidence from which it appeared to the lower court that immediate danger existed? It cannot be that, where there is no appeal from an order appointing a receiver pendente lite, this court will refuse to order the lower court to desist from proceedings which are without any evidence to support an exercise of power by that court in an appointment of a receiver. The indispensable prerequisite to the existence of the power to appoint is that it shall appear that there is immediate danger. If this does not appear, the condition does not arise. It cannot arise where the power may be exercised at all. The court has not put itself in a position where it can act by appointing a receiver; hence it seems to us the power to act is wanting, and action by appointment is in excess

of the bounds prescribed by the court by law, and is beyond its juris-
diction."

This illustrates the dilemma into which courts have been
forced because there is no adequate machinery provided for
reviewing interlocutory or intermediate actions by lower
courts when such actions relate to those matters which can-
not readily or never can be undone by an appeal from a
final judgment, even though the court has jurisdiction. Un-
questionably on principle the Montana court was wrong in
its deductions, because exactly the same reasoning could be
applied to give the superior court the right to issue a writ of
prohibition in respect to any matter decided by the lower
court where there was no evidence, or not sufficient evi-
dence, to sustain the action. In any case where the lower
court acted erroneously because it thought there was evi-
dence when there was no evidence, it could be said that the
court lacked jurisdiction to make the order to proceed for
the same reason employed by the Montana Court. Certainly
there is no difference between the case where a court finds
an ultimate fact upon which judgment depends without suf-
ficient evidence or without an allegation which supports evi-
dence, which it is admitted is only error, and the case where
the ultimate fact which it must find is one as to whether a
receiver should be appointed, which ultimate fact is not sup-
ported by any or insufficient evidence.

We have suspected, and it is borne out by the cases, that,
owing to the inadequacy of judicial machinery, the superior
courts have ofttimes, where the lower court was about to
make some intermediate or interlocutory order which would
seriously affect a relationship, a status, a right to hold
office, or the right of lienholders, stockholders, creditors,
or others, or the rights in or status of property, and where
the status quo by such order would be changed from that
over which it would be were the suit to proceed along the
simple lines of a trial of fact, issued the writ of prohibition
for the purpose of stopping the mischief which would other-
wise be done even though technically there is no lack or no

excess of jurisdiction in the lower court. In issuing the writ in such a case, the courts have either taken pains not to be too inquisitive as to whether there is excess or lack of jurisdiction or they have simply twisted what is really only error on the part of the lower court into lack or excess of jurisdiction, or perchance they have found a situation in which there was truly excess or lack of jurisdiction. That appears to be the situation in the Oldroyd Case, although it must be said in that case that the order permitting the issuance of the receiver's certificates was made ex parte on petition by the receiver without notice to the land board which held liens on the property which would be affected by the receiver's certificates and without hearing thereon. If such notice and hearing were necessary, as the court held, then the court did not have jurisdiction of one of the parties to be affected by said order permitting receiver's certificates to be issued and, consequently, it was without jurisdiction as far as that party was concerned, and hence the subsequent threatened order to sell the land free of prior liens may have been for that reason in excess of the court's jurisdiction in the receivership proceeding. It may be noted that in the case of *Joseph Nelson Plumbing & Heating Supply Corporation* v. *McCrea*, 64 Utah 484, 231 P. 823, the court denied the writ to stop the lower court from setting aside a receiver's sale, stating that the court had power to set aside the sale regardless of whether its reasons were good or bad.

In the Decennial Digests, under the title Prohibition, will be found a multitude of cases in which the courts have considered the question of jurisdiction. In the great majority of those cases where the writ has been refused because the superior court concluded the inferior court had jurisdiction, it will be found that the facts were such as clearly to reveal that the lower court was not exceeding its judicial powers. In the majority of cases where the writ was granted, it was equally clear that the lower court had exceeded its judicial powers. Such rulings are represented in our own jurisdic-

tion by the cases of *Reese* v. *Judges of Dist. Court,* 52 Utah 520, 175 P. 601; *Industrial Comm.* v. *Agee, Judge,* 56 Utah 63, 189 P. 414; *Adams* v. *Pratt, Dist. Judge,* 87 Utah 80, 48 P. (2d) 444; *Tullis* v. *Pratt, Dist. Judge,* 86 Utah 244, 42 P. (2d) 222; *Martineau, Justice,* v. *Crabbe,* 46 Utah 327, 150 P. 301; *State ex rel. Brown* v. *Third Jud. Dist. Court,* 27 Utah 336, 75 P. 739, 1 Ann. Cas. 711; *Mammoth Canal & Irr. Co.* v. *Burton,* 70 Utah 239, 259 P. 408; *Construction Securities Co.* v. *Dist. Court,* 85 Utah 346, 39 P. (2d) 707; *Bankers' Trust Co.* v. *Dist. Court,* 62 Utah 432, 220 P. 708; *Gibbs* v. *District Court of Third Jud. Dist.,* 86 Utah 314, 44 P. (2d) 504, in all of which the writ was denied; and by the cases of *Clark* v. *Bramel, Dist. Judge,* 57 Utah 146, 192 P. 1111; *Thornton* v. *Evans, Judge,* 55 Utah 268, 185 P. 454; *Holm* v. *Pratt, Dist. Judge,* 52 Utah 593, 176 P. 266, in all of which the writ was granted.

In a comparatively small number of cases where the writ was granted, it was quite evident that the court was influenced by the fact that, if it did not act to prevent the threatened action by the lower court, irremediable harm would have been done. The courts either ignored the distinction between what was merely error and excess of power or, as in the Montana case in 56 Pacific Reporter above cited, managed to see an erroneous ruling of the lower court as in excess of jurisdiction, or else confused the reasoning so that it is difficult to determine upon what ground the court did decide. In a still smaller number of cases the line which separated the erroneous action of a court in its legitimate judicial field from action in a field in excess of its powers was so difficult to draw that minds might go one way or the other in drawing conclusions.

From what has been said above, the following conclusions may be drawn: (1) That the court to which application for a writ of prohibition is directed will not try out the question of the sufficiency of a complaint or information where the complaint or information states sufficient facts to apprise the court in which the action has been brought as to whether

it has jurisdiction of the general subject-matter in respect to which the pleadings seek to invoke its jurisdiction in the particular case endeavored to be set forth by the pleadings. (2) That exceptions to this rule have been made in some jurisdictions in criminal cases or in cases where an accusation is filed to remove a public officer from his office; that our own jurisdiction apparently is one of these. (3) In a number of jurisdictions where a threatened interlocutory or intermediate order involving some affirmative action of the lower court in reference to property, status, relationship, or rights of parties in respect to property was of such a nature as to destroy the status quo and render an appeal or other remedy ineffectual to undo the mischief, the courts have issued the writ of prohibition as a "fill-in" in order to prevent threatened mischief; most times not giving reasons therefor except to say categorically that the court below was threatened to exceed its jurisdiction or judicial powers or proceeding unlawfully or without legal warrant.

It is impossible to reconcile all these decisions or to evolve any rules of guidance from the cases which can be accurately applied to any given situation. What can be said is that ordinarily the superior court will look only to see if the lower court was acting without or in excess of jurisdiction, and, if so, whether there is still not some adequate and speedy remedy, but that, in certain situations where it would work a palpable injustice or hardship or cause damage which could not be checked or remedied in any other way, the superior court will not go too refinedly into the question as to what constitutes error merely or lack or excess of jurisdiction before issuing the writ.

In this opinion we have not considered any of the Utah cases where the application for a writ was to arrest the action of an officer or board. These are the cases of *Cottrell* v. *Millard County Drain. Dist.*, 58 Utah 375, 199 P. 166; *Livingston* v. *Millard County Drain. Dist. No. 3*, 58 Utah 382, 199 P. 661; *Moyle* v. *Board of Com'rs of Salt Lake County*, 53 Utah 352, 178 P. 918; *Van Orden* v. *Board of*

*Education of Cache County School Dist.*, 56 Utah 430, 191 P. 230; *Booth* v. *Midvale City*, 55 Utah 220, 184 P. 799; *Hartley* v. *State Road Comm.*, 53 Utah 589, 174 P. 639. The question of when or if the writ will lie to stop ministerial acts instead of injunction is not material to this opinion. Nor have we considered those cases in this jurisdiction where the writ was denied because there was an adequate remedy at law and thus the question of jurisdiction not considered. See *State ex rel. Carrigan* v. *Bowman*, 40 Utah 91, 119 P. 1037; *Overland Gold Min. Co.* v. *McMaster*, 19 Utah 177, 56 P. 977.

Since both parties to this proceeding have, with good reason, assumed that the question of the sufficiency of an accusation may be determined on a writ of prohibition, we shall consider the respects wherein the plaintiff here contends that the accusation is insufficient. He contends: (1) That the complaint does not allege that at the time of the commission of the alleged acts he was a member of the school board; (2) that the accusation does not state facts which show that the items charged were for services rendered by said relator as a member of the board of education and does not allege that the charges complained of were not within the expense provision of section 75-11-8, R. S. 1933; (3) that the accusation does not show that the charges were fees but rather that they constituted, if anything, a false and fraudulent claim and not the kind of legal fees within the purview of section 105-7-15, R. S. 1933; and (4) that the accusation does not allege any facts from which it can be determined that the charges and collections complained of were corruptly made.

From here on the plaintiff in this action, defendant in the action of ouster, shall be referred to as "relator," and the plaintiffs in the ouster action as "accusers," in order to avoid confusion between plaintiff in this action and plaintiffs in the ouster action.

As to the first contention, we think the complaint by imperative and necessary inference alleges that the relator was a member of the school board at the time he presented the

claims. It states that he was elected and duly qualified in the month of January, 1933. It later states that he received his salary up to and including the month of March, 1935. The law (section 75-10-1, R. S. 1933) provides that the members of school districts shall serve for four years. Having been elected and qualified in January, 1933, as a member of the school board and having been paid his salary up to March 4, 1935, only one conclusion could be drawn, and that is that he had received his salary properly and that he remained a member of the school board at least during that part of the four years in which he was alleged to have presented the claims which were all presented before March 4, 1935. The rule that "a pleader must state the facts of his case by averments direct and positive, and not leave them to be deduced by argument and inference or from mere recitals," etc., found in 21 R. C. L. 445, does not mean that no inferences or conclusions may be taken in order to supply a third fact from two other facts alleged where the third fact must necessarily follow as a conclusion from the other two facts. The rule of common sense still applies. In the case of *Edson* v. *Superior Court of Siskiyou County,* 98 Cal. App. 367, 277 P. 194, it was held that the accusation did not specify that the accused at the time of presenting and filing the accusation were members of the board of trustees of the town of Mt. Shasta. The accusation alleges that the accused, naming them, were duly elected and qualified trustees and acted as such "at all times *herein mentioned."* The only times mentioned in the accusation were the 1st of June and the 1st of July, 1928. The accusation was presented after both of these dates. In the instant case the complaint alleged that the claims were presented during the period in which the accused received his salary as a member of the board. It must therefore follow as a necessary conclusion that, having been elected for a term of four years which did not expire until long after March, 1935, he was still a member at the time when it was alleged he presented

false claims. The first contention of the relator is therefore not well made.

As to the second contention, that the accusation does not show that the items charged were for services rendered by relator as a member of the board of education, we believe it does. The complaint states that items charged were for services rendered by Atwood as a member of the board of education. The items themselves reflect that they were for services in connection with the schools. It is difficult to see what facts, other than evidentiary, could be alleged. The petitioner contends that some allegation should be made as to what the duties of the school board were by showing a record wherein they are set out. But a definition by the school board as to what were the duties of its members would not be all-inclusive or even comprehensive. As to what are the duties of a school board member may in some cases depend upon a matter of law under the facts, or it may be for the jury to say from all the evidence. Whether visiting schools in the district is a duty of a school board member, or, if not a duty, when performed comes under the purview of services which should be performed for the salary, is an ultimate fact. The allegation that it is pleads not a conclusion but an ultimate fact. Likewise whether hauling water is included in those services which a member of the school board should render as part of the services for which a salary is paid, or whether it is something he may be paid for extra, under the principle laid down in the case of *Burke* v. *Knox,* supra, may or may not depend on a question of law purely. Manual labor performed by a county commissioner on roads was evidently treated in the decision of *Burke* v. *Knox* as not being within the ordinary duties of a county commissioner, but compensable independently as would be the services of any other citizen. It would appear that the service of hauling water for schools would hardly be within the duties usually and ordinarily performed by a member of the school board. However, at this stage we cannot say as a matter of law that it would not be. Perhaps

the accusers may show evidence to the effect that it was made one of the salaried duties of members of the school board. All we need decide now is that the allegation that such services were within the salaried duties is sufficient. The accusers will have to establish it.

The relator, if we understand his contention correctly, maintains that the complaint should negative the fact that the items charged and collected were not for expenses allowable under section 75-11-8, R. S. 1933. This section allows for only traveling expenses above the ■ salary. Certainly, when the complaint shows that the items were for a half day's time visiting a school and there are separate items on the claim for mileage or that the claim was for hauling water, the very items show that they were not for traveling expenses. If it is necessary to negative that they were not for traveling expenses, that has, in effect, by the pleading been done.

The next contention is that the charges collected from the board were fees within the purview of section 105-7-15, R. S. 1933. In the case of *Skeen* v. *Craig*, 31 Utah ■■■ 20, 86 P. 487, 491, it was stated:

"To bring the charging and collecting of illegal fees within the statute [referring to section 4580, Comp. Laws Utah 1907, the same with amendments now being section 105-7-15, R. S. 1933], it is not necessary that such fees be obtained from any specific source or sources, nor that they be charged and collected by an officer who is authorized by law to collect fees for specific services. The charging and collecting of illegal fees from the state, county, or municipality, by a public officer for private gain, is as clearly within the statute as the charging and collecting of illegal fees from a private individual."

On the other hand, it is stated in *Parker* v. *Morgan*, 48 Utah 405, at page 407, 160 P. 764, 765:

"The statute, in express terms is limited to the collection of illegal fees, that is, fees not allowed by law 'for services rendered or to be rendered in his office.' This, manifestly, was not intended to cover every unauthorized claim that may be presented by a county official against the county, but it covers only, as expressed in the statute, il-

legal fees; that is, fees that are in excess of those fixed by law for official services rendered by the county attorney. For example: Let it be assumed that the county attorney is, by law, permitted to charge 50 cents or $1 to prepare a certain official document, but he has 'knowingly, willfully, and corruptly' charged 75 cents or $1.25 for his services, then he has violated the provisions of section 4580, and, if judicially established, the court must remove him from his office. If, however, he employs a clerk or stenographer and pays him $50 per month for his services, but files a claim against the county for $60 per month, which is allowed and paid by the county, he, at most, has filed an excessive claim against the county."

These statements appear contradictory. The law in that regard should be certain and not ambiguous. We take this occasion to say that we believe section 105-7-15 was intended to cover those specific cases only where illegal fees were collected by an officer from the public, that is, where the statute authorized or required him to collect fees and he collected different fees than those authorized, or where he was not authorized or was prohibited from collecting fees and he did collect fees. It was not intended to cover the case where an officer of a political unit charged and collected from the political unit for services not earned or in excess of what was earned. It is conceded in the *Law Case,* supra, that it could never include a charge for the return of money alleged to have been paid as expenses on behalf of the political unit, nor for materials furnished to a particular unit. The *Law Case,* 34 Utah 394, at page 412, 98 P. 300, 307, stated:

"It seems to us that the proof as above outlined does not bring respondent's case within the provisions of section 4580. The items of expense set out in the charge cannot be construed as a charge for illegal fees for services rendered. The respondent made no claim for any services, but the claim was one for money paid out and expended by him in the discharge of an official duty, for which the law provided neither fees nor compensation other than the salary provided for him by section 2057, Comp. Laws 1907, and he did not attempt to make a charge for services by presenting the claim either against the state or Cache county."

The logic would be that a false claim for materials furnished to a political unit could not be brought under section 4580, Comp. Laws 1907, or its equivalent, section 105-7-15, R. S. 1933, because it could not be a "fee." By the same token, a false charge for services rendered to the county cannot be a fee as meant by section 105-7-15, unless the fee statute expressly provided that an officer of the political unit charge to that political unit certain fees for services just as the general public would be charged by the officer for fees for such services. If, in such a case, fees other than those provided by the schedule were charged against a political unit, a case might be made out under section 105-7-15 if the other elements as set out hereunder were present. In such case, as far as the charging and collecting of fees is concerned, the political unit would be considered in the same class as the public.

From what has been said, it follows that we adopt the view stated in *Parker* v. *Morgan,* supra, to the effect that a charge and collection for services by an officer from a political unit is not the collection of a fee within the meaning of section 105-7-15, R. S. 1933. This might seem to dispose of the case were it not that we think an accusation which states facts sufficient to bring it under section 105-7-2, although not under section 105-7-15, would be good as against a general demurrer even though it may have been intended to state the situation under the latter section. In *Law* v. *Smith,* supra, 34 Utah 394, at page 414, 98 P. 300, 308, it is stated:

"By the provisions of section 4066 [now section 103-1-17, R. S. 1933] a mere conviction of a felony which involves misconduct in office in and of itself forfeits the right of the convicted person to continue in or to hold office. If, therefore, an officer were found guilty of the felony denounced in section 4083, this would cause his removal without any further action or proceeding. But it is not necessary in order to remove an officer from an office that he be convicted of a crime. If he is found guilty of an act which constitutes malfeasance in office, he may be removed. If, therefore, the fact should be made to appear beyond a reasonable doubt that the respondent had

preferred a claim against Cache county, and had received payment thereof with full knowledge that he had no legal right to the money, he would be guilty of an act of malfeasance in office, and could be removed therefrom."

In the case of *Burke* v. *Knox,* supra, the accusation did not refer to any particular section of the statutes. In the instant case it did refer in the prayer to section 105-7-15, R. S. 1933. The court in the *Burke Case* implied, but did not decide, that the complaint must refer to a particular section, founding that statement on what was contained in the decision of *Parker* v. *Morgan,* supra. The *Burke Case,* 59 Utah 596, at page 604, 206 P. 711, 714, contains the following language:

"We have pointed out that the facts in this case do not materially differ from those in the Parker Case. If then it was essential in the Parker Case, and it seems this court in effect so held, that the district court should be prohibited from proceeding with the case merely because the accusation was predicated on the wrong section of our statutes, it is difficult to conceive why the district court in the present case should be permitted to proceed when the plaintiff is not informed nor the court advised by the accusation that the action is based on any provision of our statute."

The *Parker Case,* 48 Utah 405, at page 409, 160 P. 764, 765, contains the following language:

"One of the grounds upon which this application is based is that the acts alleged in the accusation filed against the plaintiff do not come within section 4580 [same as section 105-7-15, R. S. 1933], upon which the accusation is based, and that for that reason the district court is without jurisdiction to proceed, and we so hold."

The case of *Parker* v. *Morgan* failed to apply the logic or conclusions of *Law* v. *Smith,* although both cases were written by the same author. In section 103-1-6, R. S. 1933, it is provided that:

"The omission to specify or affirm in this code any ground of forfeiture of a public office, or other trust or special authority conferred by law, * * * does not affect such forfeiture or power, or any

proceeding authorized by law to carry into effect such impeachment, removal, deposition or suspension."

If there then may be causes for removal which are not assigned in the Code, it may in some cases be difficult to specify by what section of the Code they were denounced, because they would be denounced by no section, yet the acts might constitute malfeasance in office.

In the instant case the prayer refers to section 105-7-15 in asking for costs, and the manner in which the amended complaint and accusation is constructed implies that it was intended to bring it under that section. We think the inconsistency between *Law* v. *Smith* and *Parker* v. *Morgan* should not be left to trouble the bar. We believe that the better rule is that, if a complaint states a good ground for the removal of an officer whether it fails to name a section of the Code under which the proceeding is intended to be brought or whether it does name such section and the facts are insufficient to show that the accuser could proceed under that section, yet does state grounds which make procedure under another section applicable, the accusation should be held good as against a general demurrer.

It should be noted that we refer only to sections under which an accuser could proceed. It is not necessary in this case to decide whether, when the violation of a statute or a malfeasance named as a ground for removal is referred to specifically as being in violation of a particular section and on the face of the complaint it appears not to be, the complaint will state a cause of action.

Having come to the conclusion that the complaint is not insufficient because it referred to section 105-7-15 and because it appeared to have been constructed to state a violation of said section when it might be good under section 105-7-2, although not stating a good ground as showing a violation of the first-named section, we proceed to determine whether the amended complaint and accusation sets out elements which constitute a high crime,

misdemeanor or malfeasance in office as is required to remove an officer under section 105-7-2. This directly leads into the fourth contention made by the relator to the effect that the complaint does not allege facts from which it can be determined that the charges and collections complained of were corruptly made. If the claims made and collected by the relator from the school board are not to be considered as "fees" within the meaning of section 105-7-15, does the amended complaint and accusation state a cause for removal? If it alleges a crime or malfeasance in office, it would state a cause for removal. It sets out the presentation and collection of certain claims. It sets out that these services for which the charges were made were services paid for by his salary; thus in effect alleging that they were not due and that the collection was illegal. Is the element of corruptness necessary to make a valid complaint when the grounds of the complaint do not come under section 105-7-15, but when they charge a misdoing by collecting for services which we hold not to be fees under such last-named section, but which it is alleged could not be charged for? We think it is. In *Skeen* v. *Craig*, supra, this court held that section 4580, Comp. Laws 1907, which was the then section pertaining to the illegal collection of fees, did not require bad faith or fraud or corrupt motives to be shown. In that case (31 Utah, 20, at page 30, 86 P. 487, 490) it is said:

"We know of no rule or principle of law that permits a public official, who is charged with official misconduct in knowingly charging and receiving illegal fees, to show good faith on his part, or, rather, lack of intent to commit a wrong, by proving that he performed the services and did the work which the duties of the office imposed upon him. * * * It seems that the court, in charging the jury, proceeded on the theory that, notwithstanding defendant may have charged and accepted fees as city councilman to which he was not entitled, yet, if he did so in ignorance of the statute prohibiting it, without any corrupt intent on his part to defraud the city or commit a wrong, he could not legally be adjudged guilty and removed from office, and counsel for defendant claim that because of his good faith in charging and receiving the extra compensation as shown by his own testimony,

which they claim is not disputed, no corrupt intent existed in his mind, and therefore he could not be adjudged guilty of the offense."

This court held such instruction incorrect because it did not require a showing of corrupt motive or knowledge that he was doing wrong when he presented the claim. But, since the Skeen Case, what is now section 105-7-15, R. S. 1933, has been amended to require the act of collecting illegal fees to have been done "knowingly, willfully and corruptly." While, as stated above, the acts charged in the complaint are not under section 105-7-15, and therefore, if they are to be sustained, must be shown to have been malfeasance in office as meant by section 105-7-2, yet it remains a question as to whether the Skeen Case is to be followed so as to require us to hold that the mere collecting of a claim to which the relator was not entitled amounts to malfeasance regardless of whether it was done with a knowledge that it was wrong or innocently done. The case of *Law* v. *Smith,* supra, is in point. It states (34 Utah 394, at page 415, 98 P. 300, 308) :

"In order to authorize a removal from office, however, the act of which the officer is accused must be positively unlawful, or must involve some evil or wrongdoing on his part which must be known to him to be so when the act is committed. * * *

"It does not follow, however, that, because an officer prefers a claim against the state or a county or a municipality the payment of which the law does not authorize, he is necessarily guilty of either a crime or malfeasance in office. If this were so, every officer would be guilty who preferred a claim the payment of which upon investigation was found not to be authorized by law. Before an officer may be removed from office for malfeasance for preferring a claim which is unauthorized by law, the jury must find beyond a reasonable doubt that the officer knew when he preferred, the claim or received payment that he was not entitled to the money—that he had no legal right to receive it. This knowledge may be shown by direct evidence, or it may be inferred from the facts and circumstances in the case. While it is true, as we have shown from the authorities cited, supra, that, in order to constitute malfeasance in office, it is not necessary that the officer had a specific intent to defraud, it nevertheless is necessary that the act charged against him must involve conscious

wrongdoing on his part. The mere act of filing an unauthorized claim and receiving payment thereof may or may not constitute a wrongful act as contradistinguished from one that is not sanctioned by law. It is for the jury to say, under proper instructions from the court, whether the act of the officer involved conscious wrong-doing in view of all the facts and circumstances disclosed by the evidence. As a general rule, it cannot be said as matter of law that a particular act is wrongful and constitutes malfeasance in office simply because it is not authorized by law, and the jury ought to be so instructed."

That part of the language above quoted which reads, "While it is true, as we have shown from the authorities cited, supra, that, in order to constitute malfeasance in office, it is not necessary that the officer had a specific intent to defraud, it nevertheless is necessary that the act charged against him must involve conscious wrongdoing on his part," appears to us to be rather meaningless because we find it impossible to see how a person could put in a claim with the intention of obtaining money for it, knowing it to be wrong, and not have an intent to defraud. It seems to us he would have a specific intent to defraud. A close reading of the Law Case will reveal the fact that the court evidently was having difficulty with the language in the case of *Skeen* v. *Craig*, supra, which case held, as shown above, that it did not require a specific intent to defraud, and therefore the Law Case, in order to extricate itself from the situation it was placed in by the Skeen Case, made some attempted distinction between a specific intent to defraud and a specific intent to gain money by an act which the officer knew was wrong. At this time we believe all such impossible distinctions should be discarded and that we should place the law in this jurisdiction on an understandable basis.

We therefore come to the conclusion, in order to show that an officer who put in a claim for something which he was not entitled to or which the law did not authorize, generally called an illegal claim, that he must have done so knowing that he was doing wrong or at least under such

circumstances that any reasonable person who had done the same thing would have known that he was doing something wrong. The innocent filing of an illegal claim, thinking he is entitled to it, does not make malfeasance in office in that regard.

The relator urges that it is not sufficient to charge generally that the officer did the acts corruptly, but facts must be shown from which it can be inferred that it was done corruptly. Relator cites a number of cases where the courts have held that general words of characterization such as "fraud" or "fraudulent" are insufficient in themselves as allegations of fraud. He also cites a number of cases to show that, where a specific intent or motive is an element required to prove a crime, the facts to show such specific intent or motive must be specifically alleged and proved. It is quite true that elastic words which in themselves are not designed to particularize must be invested with a content in order to make them meaningful. For instance, the description, a thick tree, is only comparative. A tree three feet in diameter is specific. Where certain facts are set out which in themselves are not fraudulent, the mere characterizing of such acts as fraudulent by attaching the word "fraud" or "fraudulent" is not sufficient. For instance, to state that a person fraudulently transferred his property is not sufficient, because a person may rightfully transfer his property. To add to it the general characterization of fraudulent does not acquaint the court or the opposite party with the circumstances or acts which surround the transfer which made it fraudulent. Likewise, stating that a person fraudulently, with intent to defraud or cheat, induced or sold or transferred certain property to a person for a valuable consideration, furnishes another example of where a rightful act, such as a sale or transfer, is not sufficiently changed in character by the mere addition of a general characterizing adverb. Generally the cases may fall under three headings: First, where the acts alleged are not wrong in themselves and an attempt is made to show them to be wrong or

fraudulent or illegal or corrupt or willful by the mere addition of a characterizing word or a characterizing phrase, without investing that word or phrase with the content of fact from which the general quality which the word connotes could be inferred. Second, those cases in which the acts themselves which are alleged show on their face that fraud has been committed or that the acts were corrupt or willful. The mere addition of a characterizing word in such a case is mere surplusage. The facts already have been pleaded from which the fraud or the corruption or the willfulness may be inferred. Adding epithets is merely a consummation of what the allegations without the epithets show. Third, that class of cases where the wrong or corrupt motive is required as an ingredient and where the same is alleged by general words, such as willful or corrupt, but such word, under the circumstances, can only have one content or one meaning.

We believe that the instant case falls under the third class. As stated heretofore, the complaint charges the presentation and collection of certain claims for services which it states as an ultimate fact were services which were paid for by the salary. It therefore, in effect, charges the presentation of an illegal claim. But, as we have heretofore stated, the presenting and collection of a mere illegal or unlawful claim is not necessarily malfeasance in office. It may have been done innocently or by mistake. Therefore, another ingredient, corruptness, must be alleged. Corruptness can mean only one thing in connection with the presentation of an illegal claim, to wit, that the claim must have been presented knowing that it was illegal. In other words, that the presenter knew that he was committing a legal wrong or knew that his action was an attempt to defraud a political unit to which the claim was presented. The only meaning corruption can have is that the presenter of the claim knew that he was doing wrong. It can have no other meaning. In this case, corruption equals knowledge by the presenter that he is doing something which the law does not authorize him

to do, and therefore he is doing something knowing that he is committing a wrong. That being the case, either side of the equation may be used in the pleading. If the amended accusation and complaint had stated that the "defendant did knowingly, willfully and corruptly collect and receive from said school district fees in addition to and in excess of the maximum salary allowed by law to said defendant as a member of said Board of Education, for services rendered as a member of the said Board of Education, said excessive fees being in the sum of Four Dollars," and did so knowing that the same was illegal at the time he presented said claim with intent to do wrong and defraud the school district, it would not have stated any more than it did state when it said the "defendant did knowingly, wilfully and corruptly collect and receive," etc.

In the case of *Rasmussen* v. *Sevier Valley Canal Co.*, 40 Utah 371, 121 P. 741, 743, cited by the relator, the decision evidently failed to see that the complaint, besides using the words "wrongful" and "without authority," went on to show that it was without authority from any one who could have given authority to transfer the stocks. It is difficult in that case to see how one could allege that the corporation had wrongfully transferred the stock otherwise than by using "without authority of the decedent, his legal heirs or representatives, and in violation of its trust." This is a case which appears to come under the second heading above set out; the words "wrongfully and without lawful" before the word "authority" being mere surplusage.

The case of *State* v. *Farmer*, 104 N. C. 887, 10 S. E. 563, contained in relator's brief, is a good illustration of the first class of cases. In that case it was alleged in the information that the physician "unlawfully and willfully did give to one G. H. a *false and fraudulent* prescription for spirituous liquors, he the said D. H. Farmer, being then and there a' practicing physician." (Italics supplied.) Under the law physicians could give prescriptions, but they could give them only in certain cases. The act of giving a prescription for

spirituous liquors was itself not unlawful. It might have been false, as stated by the court, because of the incompetency of the physician, or it might have been false because given to a patient who was not in need of liquor, or to a person for the purpose of evading the law and as a legal method of furnishing him with liquor. Here the terms "false and fraudulent" did not advance the information.

In the case of *State* v. *Topham,* 41 Utah 39, 123 P. 888, 890, quoted at length in relator's brief, we have a case in which the allegations were that an inmate was kept in a certain house of prostitution by "promises and threats and by divers devices and schemes." This does not give any hint as to whether they were promises or threats or schemes or all put together, and, if so, what was the nature of them. It is submitted, however, that it would probably have been pleading evidentiary matter to have gone into detail as to an exact promise or an exact threat made. Certainly the defendant Topham would have known whether she had induced the inmate to stay by any threat or promise or scheme and would have been in ample position to meet the same as the evidence was adduced in the court room.

The case of *Burke* v. *Knox,* supra, cited by the relator, while laying down in the abstract the rule that fraud and misrepresentation must be pleaded with particularity, states:

"In substance and effect absolutely nothing is set forth in the foregoing language of the accusation but the bare conclusions of the pleader that the plaintiff 'did not pay nor incur a liability to pay for actual traveling expenses' to exceed $15.70. Nowhere is stated the number of miles or distance actually traveled, nor what would be a legal or reasonable mileage charge to be charged by the plaintiff as county commissioner while in attendance upon committee work and the regular and special meetings of the board of county commissioners. Minds might honestly and reasonably differ as to what would be a just and proper charge per mile for travel, according to conditions and circumstances."

The complaint did state that the commissioner put in a bill for $34.70 when he did not pay or incur a liability for

traveling expenses of more than $12.45, nor more than $3.20 for actual traveling expenses while attending the regular meeting of the board of county commissioners. It would certainly seem that the criticism of that opinion that the complaint should state the number of miles and distance traveled and the reasonable mileage charge which is made by the plaintiff as county commissioner was unnecessary to be put in the information. It is purely evidence. Moreover, the complaint stated definitely that he had not expended more than a certain sum. The issue was not, What was a reasonable charge or how many miles he had gone? But the issue was, Did he put in for more than he actually expended for travel? We believe that the degree of particularity which the Burke Case seems by that language to require is unnecessary.

We conclude, therefore, that the fourth contention of the relator is not well taken. The accusers would be required to prove the illegality or unlawfulness of the claims and, in addition, that the relator knew when he presented them that they were illegal and that he was endeavoring to obtain money from the school district wrongfully. Whether a prima facie case would be made out in favor of the accusers by showing the illegality it is not necessary for us to decide. That point is not here presented. The relator has contended that the presumption that he was presumed to know the law, and therefore it is presumed that he knew that his acts were illegal, does not suffice to supply the necessary ingredient of corruptness; that is to say, it must be shown that the presenter of the claim had actual knowledge that the thing he did was illegal. This goes to the question as to the quantum of proof required to shift the burden of going ahead upon the relator. If proof of the illegality is sufficient to shift that burden by making a prima facie case, it would be either because the maximum that the presenter of the claims is presumed to know the law supplied the element of illegality or because the law would supply a presumption that he who did an illegal act knew it was illegal until evidence

was introduced to the contrary. As stated above, it is not necessary for us to decide this question, as we have before us only the question as to whether the amended complaint and accusation is sufficient to state a cause for removal. We think it is, and this disposes of the application for the writ.

Owing to the fact that we have determined that the accusation alleges a good cause of action under section 105-7-2, supra, it might be well to point out that we have considerable doubt as to whether the plaintiffs named in the action below are such party plaintiffs as could bring an action under that section. Both sides below having gone on the theory that section 105-7-15 controlled and there being no occasion to demur as to improper parties, we think the defendant to the complaint and accusation should have an opportunity to raise such point by demurrer or other proper way.

The application for the writ is dismissed and the temporary writ dissolved. Costs to the defendant.

ELIAS HANSEN, Chief Justice (concurring).

I, too, think the complaint here brought in question states a cause of action. That is the only question presented for determination. This court is committed to the doctrine that the sufficiency of a complaint to state a cause of action for the removal of a public officer from office may be tested by a writ of prohibition. If a complaint seeking such results is fatally defective, a permanent writ of prohibition will issue. It may be, as indicated in the prevailing opinion, that such doctrine is not in accord with the principles applicable to writs of prohibition generally. But in my opinion we should not now repudiate, but should adhere, to such doctrine.

I concur in the order dissolving the alternative writ of prohibition and denying the application for a permanent writ.

FOLLAND, Justice (concurring).

I recognize the opinion of Mr. Justice WOLFE as a valuable contribution to the legal learning on the subject-matters therein discussed, but, since it contains matters of criticism of decisions of this and other courts not required for a decision of this case, I limit my concurrence to those parts of the opinion which are necessary to a decision of the matters before us, including the construction given section 105-7-15, R. S. Utah 1933.

EPHRAIM HANSON, Justice (concurring).

I think the application for a permanent writ should be denied and that the alternative writ heretofore issued should be vacated and held for nought.

MOFFAT, Justice (concurring).

I concur in the order denying the petition for a permanent writ of prohibition and dissolving the alternative writ heretofore issued.