# OLSON v. DISTRICT COURT OF SALT LAKE COUNTY et al.

No. 5707.   Decided September 9, 1937.   (71 P. [2d] 529.)

*Willard Hanson,* of Salt Lake City, for plaintiff.

*White, Wright & Arnovitz,* of Salt Lake City, for defendants.

HANSON, Justice.

We are asked by proceedings in certiorari to review a ruling made by the district court of Salt Lake county in a cause therein pending between Jacob Olson, the plaintiff

herein, as plaintiff, and Richard Evans, one of the defendants herein, as defendant.

The record as certified to us shows that plaintiff filed a complaint in said district court against Richard Evans to recover damages for personal injuries alleged to have been sustained by him when struck by Evans' automobile. To this complaint Evans interposed a special demurrer. On May 8, 1935, the demurrer was noticed to be heard on May 18th. Neither the plaintiff nor his attorney appeared at the hearing on the demurrer. After arguing the demurrer, defendant's counsel asked for and was given leave to file a' notice of the taking of the deposition of plaintiff and an affidavit for the taking of such deposition. The notice and the affidavit showed on their face a receipt of copies thereof by plaintiff's attorney as of May 8, 1935. May 15, 1935, at 2:30 p. m., was the time fixed by the notice for taking the deposition. The record then shows that after being given leave to file these papers, defendant's attorney made a statement to the court to the effect that plaintiff had failed to appear to have his deposition taken and that his attorney had stated he would not advise plaintiff of the pretended service on him, the attorney, and would not advise Olson, his client, to attend the taking of the deposition. Defendant's attorney, upon such showing, moved the court for a rule that "defendant be not required to answer the complaint as filed or any amendment thereof until ten days after plaintiff had appeared for the taking of said deposition pursuant to said notice and affidavit or such notification thereof as to the time and place consented to by defendant." After having had the matter under advisement, the court on May 25, 1935, made and entered findings of fact to the effect that "the plaintiff [Olson] was, by and through his counsel, regularly served with notice requiring him to appear and give his deposition as provided for in title 104, chapter 51, § 7 of the Revised Statutes of Utah 1933; and that counsel for the plaintiff had informed the attorney for the defendant that the plaintiff would not appear for examination under the affidavit and

order served upon him [the attorney for plaintiff] ; and it further appears that defendant cannot properly file his answer to plaintiff's complaint until the plaintiff first gives his deposition." The court then concludes, as a matter of law, that defendant should have ten days after plaintiff appears and gives his deposition in which to answer plaintiff's complaint. The court, on the same date, entered an order that the "defendant may have ten days after the plaintiff appears and gives his deposition according to the notice heretofore served upon him as provided for in title 104, chapter 51, § 7 of the Revised Statutes of Utah for 1933, in which to answer to the complaint on file herein if the demurrer heretofore filed be overruled, or ten days after said deposition aforesaid in which to answer to any amended complaint should the demurrer be sustained and an amended complaint be filed in the matter."

On June 1, 1935, the court overruled Evans' demurrer, the minute order reciting that defendant have ten days after notice and "ten days after plaintiff shall have submitted himself for the purpose of having a deposition taken" in which to file his answer. The effect of such order ■ was to suspend any further proceedings in the case until Olson should so submit himself.

As shown by its findings of fact and the orders entered thereon, the court assumed, as a matter of law, that service of the notice of the taking of the deposition and the affidavit in support thereof upon plaintiff's attorney was service upon plaintiff and constituted or was equivalent to the service of such process upon him as would compel him to attend and give his deposition. It thus appears that the basic question before us is to determine how one must proceed to take a deposition of a party in a cause under the provisions of sections 104-51-7 and 104-51-8, R. S. Utah 1933. Section 104-51-7 reads as follows:

"The testimony of a witness in this state may be taken by deposition in an action at any time after the filing of the complaint, and the service of the summons or the appearance of the defendant;

and, in a special proceeding, after a question of fact has arisen therein in the following cases:

"(1) When the witness is a party, or an officer or agent of a corporation which is a party, to the action or proceeding, or a person, or an officer or agent of a corporation, for whose immediate benefit the action or proceeding is prosecuted or defended.

"(2) When the witness resides out of the county in which his testimony is to be used.

"(3) When the witness is about to leave the county where the action is to be tried and will probably continue absence when the testimony is required.

"(4) When the witness otherwise liable to attend the trial is too infirm to attend.

"(5) When the testimony is required upon a motion, or in any other case where the oral examination of the witness is not required."

Section 104-51-8 provides:

"Either party may have the deposition of a witness in this state in any of the cases mentioned in the next preceding section, taken before a judge or officer authorized to administer oaths, on serving upon the adverse party previous notice of the time and place of examination, together with a copy of an affidavit showing that the case is within that section."

By the terms of section 104-51-8, the same procedure is made applicable in the taking of depositions to all of the cases enumerated in section 104-51-7; that is, a notice and affidavit must be served whether the witness whose deposition is to be taken is a party, an officer of a corporation, a person who lives out of the county, or a person about to leave the county where the action is to be tried, or any of the other witnesses indicated in the other subdivisions.

It is evident that the service of the notice and the making and service of the affidavit have a particular function and utility. Likewise, that function and utility are the same and have uniform application in all of the cases mentioned in section 104-51-7. By the notice the adverse party and the court are informed that the other party desires the deposition

of a particular person and are informed of the time and place and before whom such deposition is to be taken. By the affidavit the court and the adverse party are informed that the witness whose deposition is to be taken is one of those specified in section 104-51-7 and that the moving party is thereby entitled to his deposition. The adverse party and his attorney are thus informed of the time and place of the taking of the deposition and of the statutory basis for taking the same, so that either of them may take such part in the proceedings as is deemed advisable or necessary to protect the rights of such party. In this connection it may be pointed out that section 104-51-9 provides.

"Either party may attend the examination and put such questions direct and cross, as may be proper."

The same statute also provides:

"No objection to the form of an interrogatory shall be made at the trial, unless the same was stated at the time of the examination."

Neither the notice nor the affidavit is required to contain any language which commands or requires the adverse party or his attorney or the witness named as the one whose testimony is to be taken, whether a party or not, to be present at the taking of the deposition. The notice is only what that term would imply, giving certain information by way of information, and not commanding or requiring anything to be done by the party served in connection with the information thus imparted. The party and his attorney, so far as anything required to be contained in the notice is concerned, need not act upon the information contained in the notice. Likewise, the affidavit is only informative and is concerned only with showing that the witness whose testimony is to be taken is within some one of the cases specified in section 104-51-7. Section 104-43-7 provides:

"But in all cases where a party has an attorney in the action or proceeding the service of papers when required must be upon the attorney instead of the party."

By virtue of this section the notice and affidavit required by section 104-51-8 should be served on the attorney. This is the holding in the case of *Griffith* v. *Gruner,* 47 Cal. 644, under a similar statute. But the question remains, granting that the above section requires service of the notice and affidavit upon the adverse party's attorney; can that service be regarded as the service of such process as requires either the attorney so served or his client to do anything with respect to the taking of the contemplated deposition?

Suppose a witness is about to leave the county where the action is to be tried and intends to absent himself permanently. Can it be said that either the attorney on whom the papers for the taking of the deposition of such witness were served or his client must intercept such witness and require him to drop his plans and present himself at the time and place appointed to give his testimony? Or suppose the witness resides out of the county in which his testimony is to be used; must the adverse party or his attorney hunt him up and see that he appears at the place designated for the taking of his deposition? Certainly, there is nothing in the statutes above quoted relating to the taking of depositions that imposes any such obligations. We cannot see how the fact that the witness whose deposition is to be taken is a party to the action can invest the notice and affidavit and their service upon the attorney with the indicia of process in such case any more than in the illustrations above given. If such papers and their service do not constitute a compelling process in the one case, they could not be such in the other. The attorney upon whom the notice is served is not required, by its terms, or otherwise, to hunt up his client and be responsible for his attendance at the taking of the deposition; nor does the notice command attendance on the part of the client. Clearly, therefore, the notice is not process and its service does not require the doing of anything.

Section 104-49-6 defines the process by which the attendance of a witness may be required as follows:

"The process by which the attendance of a witness is required is a subpoena. It is a writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness."

A mere notice that a witness is to be examined at a certain time and place cannot be said to be process requiring thle party served to be present at such time and place or to submit himself to examination. Section 104-49-7 specifically provides for the issuance of a subpoena to compel the attendance of a witness for examination "out of court." It reads as follows:

"(2) To require attendance out of the court, before a judge, justice or other officer authorized to administer oaths or take testimony in any matter under the laws of this state, it is issued by the judge, justice, or other officer before whom the attendance is required."

There are no qualifications contained in the section just quoted which would restrict the general application which its language implies. It is apparent that the Legislature was providing for the compulsory attendance of witnesses out of court without making any distinctions between a witness who is a party to the action and one who is not a party, or between witnesses referred to in the various subdivisions of section 104-51-7.

The statutes also provide for punishment for disobedience to a subpoena. Section 104-49-12 provides:

"Disobedience to a subpoena, or a refusal to be sworn or to answer as a witness or to subscribe an affidavit or deposition when required, may be punished as a contempt of the court or officer issuing the subpoena or requiring the witness to be sworn; and, if the witness is a party, his complaint or answer may be stricken out."

It will be noticed that the statute makes no provision covering the ignoring of a mere notice that a deposition is to be taken, but it is disobedience to a subpoena which may be punished as a contempt of the "court or officer" issuing the same. This is significant, as the statute has specifically defined the term "subpoena" in which definition no mention

is made of the notice of the taking of a deposition. Likewise, it is apparent that the word "witness" used in this section includes a party subpoenaed as a witness and that such inclusion is made without any distinction being made in the type or character of witnesses subjoenaed, except that if the witness is a party his complaint or answer may be stricken out as a result of disobedience to a subpoena. It is for disobedience of a command issued by a proper officer that punishment as for contempt is authorized. The notice provided in section 104-51-8 is not a command of any officer, but is merely notice by an attorney for a party. Even his command, if he give one, would not furnish ground for punishment as for contempt.

If the notice is process, or a paper, disobedience to which may bring the party into contempt, then it must be served as required by law upon the person who must act in response to its demand. Nowhere in the statutes is service of process authorized by serving the same on the attorney for the party sought to be charged with its service unless it be assumed that the notice required by section 104-51-8 is process and section 104-43-7 authorizes it to be served on the attorney. But that this cannot be so is apparent from the language of section 104-43-8, which expressly provides that the provisions of section 104-43-7 do not "apply to the service of a summons or other process, or of any paper to bring a party into contempt."

We think that the procedure to be followed where it is desired to take the deposition of a witness in this state as authorized by section 104-51-7 consists of the following: The party who desires the deposition taken must make and serve upon the adverse party the notice and affidavit required by section 104-51-8, such service being made by serving the notice and affidavit upon the attorney for such adverse party. The moving party must, in addition to serving the notice and affidavit as aforesaid, subpoena the person whose testimony is to be taken, if he will not appear voluntarily; such subpoena to be issued by

the officer before whom the attendance is required. We hold such to be the proper procedure whether the witness is a party to the action in which said deposition is to be taken, or has an interest therein, or is such witness as is mentioned in any of the subdivisions of section 104-51-7.

In the case of *Woolley* v. *Wight*, 65 Utah 619, 238 P. 1114, 1116, 41 A. L. R. 433, the court had under consideration the taking of the deposition of a party to an action under section 7179, Comp. Laws Utah 1917, now section 104-51-8. In that case the court stated "that the [service of the] notice provided for in section 7179 is all that is necessary in taking the deposition of a party, and that the service of a subpoena was merely cumulative at most." The court did not refer to and consider in connection with the section of the statute referred to, the other sections of our statutes relating to the attendance of witnesses through service of process to which we have referred. We think that to hold that service of notice of the time and place of taking the deposition is process and the equivalent of a subpoena where the deposition of a party to the action is sought, would necessarily result in making such notice the equivalent of process as to the one class of witnesses described in section 104-51-7, to wit, a party to the action, while serving merely as notice in all the other classes of witnesses specified in that section. We do not think such a result was intended and it could only be reached by leaving out of consideration the various statutes above referred to covering the attendance of witnesses generally, including a party called as a witness. We think the procedure as we have outlined it is the one our statutes contemplate and provides a simple method as to which no confusion need arise. In so far as the language of the court in *Woolley* v. *Wight*, supra, tends to set up a contrary rule, the same must be and is overruled.

In the case of *Burns* v. *Superior Court of the City & County of San Francisco*, 140 Cal. 1, 73 P. 597, the court reviews the statutes of California relating to the taking of depositions and the attendance of witnesses and punishment for

disobedience to a subpoena, all of which statutes are similar to ours. The court overrules the case of *Lezinsky* v. *Superior Court*, 72 Cal. 510, 14 P. 104, which held that the superior court could not punish for contempt a witness who had been served with a subpoena issued by a notary public before whom the deposition of the witness was to be taken pursuant to notice and affidavit and who refused to testify although present at the time and place noticed. The Burns Case outlines the statutory procedure which is provided for the taking of depositions in the state and for the procuring of the attendance of witnesses whose depositions are to be taken. The procedure thus outlined harmonizes with the procedure which we here hold should be followed. The Burns Case has been followed consistently by the California courts.

Since Olson was not served with a subpoena or equivalent process, he was not required to attend the taking of his deposition. There was, therefore, no failure or refusal on his part to give his deposition of which defendant Evans could complain. We have a situation, therefore, where the lower court erroneously assumed that Olson was required to attend and give his deposition and, as a means of compelling such action on the part of Olson, made an order which would hold his action forever in abeyance or until such time as he would voluntarily present himself to have his deposition taken. The order of the court, thus made, was not appealable. But to let it stand would effectively foreclose Olson from continuing with his case against Evans. It is no answer to say he could appear and give his deposition and thus remove the obstruction preventing a further prosecution of his case. As already shown, he was not required by any legal process to do this. He has brought the matter before us under a writ of certiorari. The propriety of the remedy thus invoked is not questioned by the defendants. However, it becomes our duty to consider that question.

The object of the writ of certiorari is stated by Ferris in his Extraordinary Legal Remedies, § 157, p. 178, as follows:

"The object of the writ is to curb excess of jurisdiction, to keep inferior courts and tribunals within their bounds. Its purpose is to bring for review before a superior court the proceedings and judgments of inferior courts and tribunals clothed without authority to act judicially, where no appeal or other adequate remedy is available, and is appropriate in all such cases where the substantial rights of an applicant have been so far invaded as to prejudicially affect him if the proceeding or judgment remains unreversed. It is not so much to determine the valid existence of the tribunal, board or officer, while acting in a judiciary capacity, as it is to determine whether the jurisdiction has been exceeded."

That the order of the court giving defendant Evans ten days after the plaintiff should submit himself to the taking of his deposition on the notice and affidavit served and filed was erroneous follows from what we have said herein. Whether the court exceeded its jurisdiction in making such order in a strictly technical and philosophical sense might be debatable. It is exceedingly difficult, if not impossible, in all cases to find and delineate the precise dividing line between that kind of error upon which excess of jurisdiction may be predicated, and error where that element is not involved.

In the case of *Barnes* v. *Lehi City*, 74 Utah 321, 279 P. 878, 883, involving the issuance of a writ of prohibition, which, of course, involves the same kind of jurisdictional question as certiorari, we quoted from *In re Rice, Petitioner*, 155 U. S. 396, at page 402, 15 S. Ct. 149, 152, 39 L. Ed. 198, as follows:

"Where it appears that the court whose action is sought to be prohibited has clearly no jurisdiction of the cause originally, or of some collateral matter arising therein, a party who has objected to the jurisdiction at the outset, and has no other remedy, is entitled to a writ of prohibition as a matter of right. But where there is another legal remedy by appeal or otherwise, or where the question of the jurisdiction of the court is doubtful, or depends on facts which are not made matter of record, or where the application is made by a stranger, the granting or refusal of the writ is discretionary."

In the case of *Rohwer* v. *District Court*, 41 Utah 279, 125 P. 671, 676, Mr. Justice Frick uses this language:

"This court, in common with all courts having the power to issue writs of certiorari, may exercise a reasonable discretion in granting or refusing a writ."

In the case of *Hallowel, Jones & Donald* v. *District Court*, 82 Utah 561, 26 P. (2d) 543, it was stated that the granting of the writ of certiorari rests in the sound discretion of the court.

It thus appears that even though an absolute lack or excess of jurisdiction cannot be shown, the writ can be and, in practice, is issued in the sound discretion of the higher court.

In the case of *Hillyard* v. *District Court*, 68 Utah 220, 249 P. 806, 809, the lower court had committed the petitioner to jail as for contempt without making any findings of fact to support the order of committal. The court said:

"In that the record in this case shows that the court's order committing the petitioner to jail does not contain any findings to support such order, the court did not therefore regularly pursue the authority conferred, and in that regard exceeded its jurisdiction."

We have examined all of the cases cited by this court in *State* v. *Salmon*, 90 Utah 512, 62 P. (2d) 1315, invoking the remedy of certiorari, but it would be impossible to formulate from them any statement by which an excess of jurisdiction could be definitely determined and distinguished from mere error. An extensive discussion of this question is found in the opinion of Mr. Justice Wolfe in the case of *Atwood* v. *Cox*, 88 Utah 437, 55 P. (2d) 377, 384, in a case involving prohibition. In that opinion is the following language:

"It would appear that excess of jurisdiction means a case in which the court has initially proceeded properly within its jurisdiction but steps out of the jurisdiction in the making of some order or in the doing of some judicial act."

In the case before us the record shows that the lower court had before it the defendant's demurrer to plaintiff's complaint, a matter properly within its jurisdiction, both as to the parties and as to the subject-matter. Also, the court would be required, and would be acting under that jurisdiction, to fix the time in which defendant should answer the complaint upon overruling the demurrer. After hearing counsel for defendant on the demurrer, the court was informed by statements made by defendant's counsel that defendant had sought to take plaintiff's deposition by serving a notice and affidavit upon plaintiff's counsel and leave was given to file the original notice and affidavit. The proceeding thus brought to the court's attention could have no bearing on the issues presented by the demurrer, but was an entirely unconnected and distinct matter, although growing out of the same case. The court not only overruled the demurrer, acting by virtue of its jurisdiction over the main case, but it also took cognizance of the collateral matter involving the deposition and tied the two together in its order disposing of the demurrer and fixing the time in which defendant must answer the complaint. By so doing, and by the nature of its order therein, the court brought about a complete stagnation of the main case. There was no pleading before the court involving an issue as to plaintiff's failure to respond to the notice. That matter was presented to the court merely on statements of defendant's counsel in open court in the absence of plaintiff and his counsel. True, the demurrer was regularly noticed to be heard on that day, but certainly the fixing of the time for hearing the demurrer could not be construed as fixing a time for hearing defendant on the matter of plaintiff's failure to attend the taking of his deposition. Moreover, the facts disclosed by the statements of counsel, and by the papers which he showed had been served on plaintiff's attorney, failed to disclose any duty legally imposed upon plaintiff to appear and have his deposition taken. The court did not make any finding or conclusion or adjudge that plaintiff was guilty of contempt

and no judgment of contempt, with the imposition of some kind of penalty, was made. No disposition of the collateral matter was made by an order affecting only such matter. Instead, the court made disposition thereof on its order disposing of the demurrer and then only in an indirect manner which was calculated, not to punish for contempt or for disobeying the notice, but to compel plaintiff to obey the notice or be prohibited from further prosecution of his case. If the court felt that plaintiff was guilty of contempt, why did it not cite him in to show cause why he should not be punished? If the order it made was not made on the theory that plaintiff had committed contempt, on what theory could it be supported?

It appears clear to us, from the foregoing, that the court did not "regularly pursue the authority conferred." While the lower court in its order disposed of the demurrer and, so far as that matter was concerned, was acting within the authority conferred, or by warrant of law, yet it injected into the order making disposition of the demurrer and as a part thereof an order which there was no warrant in law for it to make and which had no bearing on the matter presented by the demurrer. Its jurisdiction in that regard had not been invoked by anything before the court, and its conclusions in regard thereto were wholly without support in law. Certainly, the court did not "regularly pursue the authority conferred" and to that extent exceeded its jurisdiction. The plaintiff is without remedy. He must either submit to the order or cease prosecuting his action. This would mean that the case would continue to remain pending on plaintiff's complaint without further pleadings. We think the case warrants the granting of a writ of certiorari.

The order of the district court of Salt Lake county, ordering that defendant Evans may have ten days after plaintiff appears and gives his deposition according to the notice which was served upon his attorney, upon the overruling of the defendant Evans' demurrer to plaintiff's complaint,

is hereby annulled. Likewise, that part of said court's order overruling defendant Evans' demurrer, to the effect that said defendant shall have ten days after plaintiff shall have submitted himself for the purpose of having a deposition taken in which to answer plaintiff's complaint, is hereby annulled.

With such orders annulled, the lower court has already fixed ten days after notice in which defendant Evans is to answer plaintiff's complaint. In the event that such notice has already been served and so as to prevent a default being entered against defendant, a new notice should be served and the time for answering will date from such new service.

The cause is remanded back to the lower court, with instructions to proceed as if the orders herein annulled had not been entered. Plaintiff to recover his costs against defendant Evans.

FOLLAND, C. J., and LARSON, J., concur.

MOFFAT, Justice (concurring).

I concur in the procedure outlined in the principal opinion in this case as being the proper and necessary procedure to be followed in order to vest the court with jurisdiction to require the taking of a deposition. I am, however, of the opinion that the writ originally issued in this cause was improvidently issued, but the court having taken jurisdiction of the matter and there being some uncertainty as to the procedure, I think it is proper to dispose of the procedural matter in the instant case. The facts, however, disclose that the plaintiff filed his complaint in the district court to recover damages for personal injuries alleged to have been sustained. The defendant filed a demurrer to the complaint and noticed the demurrer for hearing. Before the time had arrived for hearing the arguments on the demurrer, the defendant made an affidavit in pursuance of title 104, ch. 51, § 7, for the purpose of requiring the plaintiff to appear

for the taking of his deposition. Notice of the taking of the deposition with a copy of the affidavit was served upon counsel for the plaintiff. When the time arrived for the hearing of the argument upon the demurrer, counsel for defendant appeared, and counsel for the plaintiff failed to appear. It was then stated to the court by counsel for defendant that the notice had been served upon counsel for the plaintiff and that counsel for the plaintiff had advised counsel for defendant that the plaintiff would not appear in pursuance of the notice and affidavit, for the taking of the deposition. It does not appear that the plaintiff was served with the notice.

Without service of any notice or any motion relating to an extension of time within which to answer, counsel for defendant then informally asked the court to make an order extending the time to answer until ten days after plaintiff should surrender himself for the taking of his deposition in the event that the demurrer should be overruled, or the same length of time to answer any amended complaint should the demurrer be sustained. The demurrer and this ex parte motion for an extension of time with the requested condition were then submitted to the court. No further notice was at any time served upon the plaintiff, except that it appears that after the court had overruled the demurrer, and had made findings of fact and conclusions of law as to the decision of the court on the matters submitted, such findings and order were served upon counsel for plaintiff.

That the court had jurisdiction to extend the time within which to answer may not be questioned. The only point involved is as to whether or not the court had the power to impose the condition as to the time to answer. As heretofore stated, I agree with the analysis made and the procedure required and that the court had no power to impose as a condition that the plaintiff should appear for the taking of his deposition. That part of the order, however, was erroneous, and before plaintiff was entitled to come to this

court for a writ of certiorari, in my opinion, he should have applied to the district court, which he had a right to do, ex parte, to have the erroneous part of the order vacated for the reason that it was made ex parte and without notice. Counsel for the plaintiff was entitled to notice of the motion to extend the time within which defendant was required to answer, as required by section 104-43-6, and even if notice of the motion had been served upon counsel for plaintiff, he still had the right to contest that part of the motion and to be heard upon it and have it vacated by the trial court and, in my opinion, should have done so, thereby giving the trial court opportunity to correct the error before filing his application for the writ in this court.

WOLFE, Justice (concurring).

I concur, although I doubt whether the order of the court was beyond or in excess of jurisdiction. Of course, it is our duty to determine whether or not we shall issue the writ. But when neither side raises the question of the propriety of the writ but questions only the merits and the question of whether a departure from the line of sound and legal action is only error or a departure of such moment as to amount to stepping outside of jurisdiction depends on philosophical niceties of distinction, I hardly think it is our duty to split hairs, especially when nothing less than a sword of prohibition may serve to cut the legal Gordian knot. I doubt whether the excerpts in the prevailing opinion regarding discretion were meant to pertain to cases where there was only error. They touched a situation where it was determined there was lack or excess of jurisdiction, yet this court would still exercise discretion in issuing the writ unless there was no other remedy. I refer to the opinion of *Atwood* v. *Cox*, 88 Utah 437, 55 P. (2d) 377, for a discussion of the distinction between error which involves a wrong assumption of jurisdiction and error which does not. The author there called attention to the difficulty in some cases of distinguishing between the two conceptions running, at times,

to the well-nigh impossible. He also stated that at times it was necessary for the review court to arrest action by the lower court where only error in the exercise of legal power was involved when the consequences would be irremedial if the lower court were permitted to continue in its course; and that in those cases, because of the lack of any writ by which interlocutory orders could be brought up for review except under the guise of being beyond or in excess of jurisdiction, the review courts benignly stretched the conceptions of jurisdiction to include treatment of them with consequent confusion and contradiction in conception and in cases. This seems to be such a case. The lower court wrongly holds that plaintiff was bound to appear in response to the notice merely and makes as a condition for defendant to answer, the fulfillment by said plaintiff of such wrongfully held obligation. There the case remains.

I see no way to get it forward. Prohibition, as certiorari, equally involves only jurisdictional questions. Mandamus could hardly lie because it is designed to require the court to act but not in a specific manner unless there is only one possible way for it to act. The court could not be mandamused to go ahead with this case until the barrier is removed. Perhaps it might be mandamused to remove that barrier, i. e., to cancel its order permitting the defendant to delay answering until ten days after plaintiff appears for his deposition. If so, it amounts to a mandamus to do a very specific act, i. e., make an order vacating an order. If this is the only possible way it could legally act in reference to its former order, it might be arguable that mandamus would lie. But it would require this court to decide in a mandamus action, not merely the question of whether the court refused to act or proceed, but the legal question of how it should act. This hardly smacks of mandamus.

Reverting for the moment again to the question as to whether the court's action in permitting answer to be made only in the event of the contingency that plaintiff appear for deposition, let us test it by the known rules. The test

of jurisdiction as stated in the Atwood Case is, does the court speak by warrant of law—not whether it speaks correctly. That always requires a preliminary inquiry in regard to the matter as to which it is speaking. In this case, when the court issued that order it was speaking in regard to the matter of fixing a time to answer. In overruling a demurrer, it has power to speak in that regard and speaks by warrant of law. Because it annexes an erroneous condition or erroneously annexes a condition as a part of the order would seem not to make it speak any the less in regard to that matter.

The view might be taken that such condition was in excess of its jurisdiction or, in other words, that it did not speak by warrant of law when it injected that condition as part of its order after erroneously deciding that plaintiff was bound to appear for his deposition. But by the same token the wrong part of any order made consequent on some erroneous legal viewpoint might be said to be in excess of jurisdiction. This brings the discussion down to the point almost of distinguishing between the deciding by the court on the one hand, and the acting by the court in pursuance of such decision on the other. That is, it was merely error wrongly to decide, but in excess of jurisdiction to act on the decision by making the condition a part of the order. Almost every decision of the court involves an order or some judicial action. The distinction is too metaphysical.

Perhaps the distinction between mere error and excess of jurisdiction may lie in determining whether the court had or had not any power to annex any condition to the requirement of answering the complaint. It would seem that under certain circumstances the court could correctly make the requirement of answering depend on a condition. This power is inherent in its control and supervision of the case. Some situation may arise where, independent of statute, the court might make further pleading by a party subject to some requirement by the adverse party. I can conceive of cases where it might almost be necessary to require

such requirement in order that the adverse party might properly plead. If, therefore, it is true that the answer or other pleading may be deterred by the court on condition that the adverse party fulfill some requirement, I can hardly see how it becomes *excess* of jurisdiction rather than just error where the condition imposed was not a proper one. The matter in reference to which the court would be speaking would be a matter in regard to which the law gave it warrant to speak. The fact that it speaks erroneously in so pursuing the matter over which it had jurisdiction should not transmute such error into excess of jurisdiction.

Certainly if a subpoena had been issued, signed by some person who purported to be a deputy clerk, and the plaintiff had not appeared, and this resulted in raising the question as to whether the subpoena was a proper one, which in turn depended upon the question of whether the person who issued it was really a deputy clerk and the court erroneously decided he was, and therefore made answer contingent on plaintiff's obeying such subpoena, would it be said that the lower court, upon this court finding that the person issuing the subpoena was not a deputy clerk, had acted not merely erroneously but in excess of its jurisdiction? I surmise not. Several times I have intimated that there is need for some writ which will bring before this court certain intermediary or interlocutory orders to be issued when such order would do irremediable harm or cause an impasse as in this case even though the making of the order was only error and not jurisdictional. Until some mechanism is so provided, I must continue to concur or decide that certiorari and prohibition are proper remedies in such cases, though to my mind the court may not have acted beyond or in excess of jurisdiction.