## BARLOW v. DAVIS et al.

No. 6542. Decided May 8, 1943. (137 P. 2d 357.)

*J. D. Skeen*, of Salt Lake City, for appellant.

*George M. Mason*, of Brigham, *Grover A. Giles*, Atty. Gen., and *A. U. Miner*, Asst. Atty. Gen., for respondents.

WOLFE, Chief Justice.

This is an appeal from the final order of the district court dismissing an alternative writ of prohibition. The writ was sought by the petitioner, Fielding B. Barlow, to prevent further prosecution of a certain criminal proceeding which had been commenced against him in the City Court of Brigham City, Utah. The petition attacked the jurisdiction of the City Court to proceed with the prosecution of the criminal proceedings on the grounds that the complaint filed did not charge the commission of any crime under the laws of Utah. Petitioner also alleged that he had no plain, speedy, and adequate remedy in the ordinary course of the law.

The criminal charge grew out of the alleged violation by Barlow of a quarantine order issued by the Utah State Board of Agriculture. From the pleadings it appears that Barlow was a farmer living at Tremonton. He owned approximately 30 tons of hay which was infected with "White Top," a weed which the Board considered to be "injurious to crops or plants." The Board issued what purported to be a quarantine order prohibiting the removal of this "White Top" infested hay from the petitioner's premises without a permit from the Board. In violation of this order, the petitioner sold the hay and permitted it to be removed from his premises.

Thereafter, on May 6, 1942, George M. Mason, County Attorney, filed a complaint entitled "State of Utah v. Fielding B. Barlow," charging:

"That the said defendant did then and there wilfully, unlawfully and intentionally allow and permit alfalfa hay infested with a noxious weed, to wit, lepidim draba, commonly known as 'White Top,' to be removed from the following described real property located in Box

Elder County, State of Utah, to wit: [describing property] after notice of quarantine as follows, to wit: [omitting headings]

" 'The State Board of Agriculture, through its lawfully authorized inspector, upon an investigation, examination and inspection, has found the following: (Produce, Agricultural Products, Tracts of Land, Building or place) Alfalfa hay, 30 tons more or less (all hay) to be
(give description, designation, amount, etc.)
infested with _____ White Top _____ , and in the judgment of said
(name kind of weed, pests, etc.)
inspector the alfalfa hay existing and located within said area is liable to spread said _____ White Top _____ which is injurious to crops or
(name kind of weed, pest)
plants: On property covering the following description The NW¼ of Sec. 18, T. W. P. 11 North, RN 3 W SLM. Therefore pursuant to provisions of Title 3, Chapter 3, Revised Statutes of Utah, 1933, the above described alfalfa hay is this day quarantined by the State Board of Agriculture, under and subject to the following regulations: 8-A. This quarantine supersedes quarantine No. B 1101.'
had been duly and regularly served upon said defendant pursuant to Regulations, Quarantine N 8-A of the State of Utah State Board of Agriculture, Bureau of Plant Industry, Laws, Rules, Regulations and Quarantine Orders, 1939, as follows, to wit

" 'No grain, seed, hay or other agricultural products infested with the seed of any of the primary noxious weeds shall be transferred from the premises upon which the same were grown except under proper supervision by an Official representative of the State Board of Agriculture. Whenever such agricultural products are found to be infested they shall not be moved or transported from the premises where stored except in compliance with the following regulations and by an official release by an authorized inspector of the State Board of Agriculture. * * *

" 'Hay, Straw or other forage raised upon land infested with primary noxious weeds, the owner of which land shall have been served with notice of quarantine by a district agricultural inspector, shall not be removed from the premises of the owner except after inspection and issuance of a permit therefor by a district agricultural inspector.'
and in accordance with the provisions of Title 3, Chapter 3, Section 2 of the Revised Statutes of Utah, 1933; contrary to the provisions of the Statute aforesaid, in such cases made and provided, and against the peace and dignity of the State of Utah."

The petitioner, in contending that the City Court had no jurisdiction to proceed further in this criminal prosecution, maintains (1) that the Board had no authority to quaran-

tine this "White Top" infested hay; (2) that if it did have such authority the violation of an order of quarantine issued pursuant to that authority did not constitute a crime under the laws of the State of Utah; (3) that the quarantine order was invalid because the Board did not follow the correct procedure in issuing it; and (4) that the quarantine regulation, Number 8-A, prohibited the removal of hay only when it was infested and infected with a noxious weed and that the complaint does not allege that "White Top" is a noxious weed.

The first contention must fail for the Board is given express authority to make such quarantine regulations by Sections 3-3-1 and 3-3-2, U. C. A. 1943. These sections provide:

Sec. 3-3-1.

"The state *board* of agriculture is hereby *vested with authority to enforce quarantine* against any * * * *infested tract of land* * * * *where any* trees, plants, shrubs, vines, scions, seeds, buds, fruits, *hay,* grain or other articles exist or *are located,* when the same are in its judgment liable to spread insects, *pests* and fungi or diseases injurious to crops or plants; and *to prescribe the necessary rules and regulations* to govern the same when not in conflict with the provisions of this title." (Italics added.)

Sec. 3-3-2, U. C. A. 1943 authorizes the Board to:

"* * * establish and enforce such quarantine regulations as it deems necessary to eradicate, and to prevent the introduction into the state and *to prevent the spread within the state of,* plant and animal diseases, insects, *pests* and fungus growths; * * *." (Italics added.)

While these sections do not specifically mention noxious or harmful weeds and weed seeds, and would when read by themselves indicate that the sections did not purport to apply to noxious or harmful weeds and seeds, Section 3-3-15, defines the term "pests" to include these items. Section 3-3-15 provides:

" 'Pests' includes any *harmful seeds, weed seeds,* rodents, insects or other animals, fungi, bacteria or other plants, or eggs, spores or off-spring or any of their products, that may infect or infest crops, lands, premises, animals, containers or other environment of any name or nature." (Italics added.)

We must conclude from the clear language of these sections that the Board has the authority to quarantine any tract of land upon which is located any hay which in the judgment of the Board was liable to spread harmful seeds or weeds that may infect or infest crops, lands, premises, etc. The Board also is given authority to prescribe rules and regulations and to enforce such regulations as it deems necessary to prevent the spread within the State of harmful seeds and weeds which in the judgment of the Board are liable to infect or infest crops, lands, premises, etc. While, as the petitioner contends, Article Three of Chapter 3 is headed "Noxious Weeds" and prescribes the authority of the Board in regard to eradication of weeds that are declared to be noxious, it is not the only Article in Title 3 which purports to deal with noxious weeds. Article One was apparently designed to *prevent the spreading* of noxious or harmful weed seeds which might infest crops by authorizing the Board to quarantine lands upon which was located any crops or plants infested with said harmful seeds. Article Three, on the other hand, was directed at the eradication of noxious weeds by authorizing the Board to *destroy* said weeds at the land owner's expense.

This holding disposes of the petitioners first contention. The contention that it would not be a crime to violate a quarantine order of the Board issued pursuant to this authority must also fail. Section 3-1-14, U. C. A. 1943 expressly provides that

"Any person who violates any rule of the state board of agriculture is guilty of a misdemeanor."

The only construction which could be placed on this provision is that it provides that it shall be a misdemeanor for

any person to violate any rule or regulation of the Board made pursuant to the authority vested in the Board by the various sections of Title 3, U. C. A. 1943.

The petitioner argues that Section 3-3-2 prescribes its own exclusive penalty in that it authorizes the Board to destroy the infested hay and to charge the expense of so doing to the land owner. But the petitioner overlooks the further provisions of that section which specifically authorize the Board to

"establish and enforce such quarantine regulations as it deems necessary to eradicate * * * and to prevent the spread within the state of * * * pests."

The Board pursuant to this authority did prescribe such a regulation, regulation 8-A set out above, which forbade, after notice of quarantine, the removal of infested and infected hay from the premises upon which it was located.

The other propositions urged by this petition for a writ of prohibition are matters which could be equally well determined by the usual remedy of appeal in event the trial court commits error in the criminal proceeding. From the pleadings it was made to appear that the Board was attempting, by the assertion of a power which it was alleged it did not have, to prevent the petitioner from selling his crops; that the Board had instigated a criminal proceeding to prosecute the petitioner for conduct which the petitioner contended was not a crime; and that unless the Board was restrained the petitioner would suffer irreparable injury because of this alleged usurpation of authority by the Board. However, we have held that the Board has the authority to make quarantine orders and that the violation of an order made pursuant to this authority would constitute a misdemeanor under the laws of this State. There are no other issues set forth which could not be raised equally well by way of defense to the criminal prosecution. That is, the petitioner will suffer no irreparable injury if he is required to litigate his other contentions in the criminal proceeding.

In other words, the contention that there is no allegation in the complaint that "White Top" is a noxious weed; that the complaint is defective because it fails to allege that fifty or more taxpayers had petitioned to have "White Top" declared to be a noxious weed; and that the complaint is defective because there is no allegation that the Board had designated "White Top" to be a noxious weed, are all directed toward the sufficiency of the complaint. As we stated in *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377, 381,

> "Where the law gives the power to entertain a cause, and the pleadings state facts sufficient to show that such a cause is intended or attempted to be brought before the court, the court has jurisdiction to entertain or proceed with it even though the pleading does not state facts sufficient to constitute a cause of action or a crime, as the case may be."

Here the Board did have the authority to make quarantine regulations and the violation of an order issued pursuant to that authority would constitute a misdemeanor. The pleadings show that the Board did pass regulation 8-A. The petitioner does not contend that the correct procedure was not followed in the passing of this regulation, but asserts that the order made pursuant to said regulation was defective in that it did not give proper notice, and that the complaint which charges defendant with the violation of the regulation does not contain certain allegations alleged to be necessary. Even if the missing allegations were held to be jurisdictional, there is nothing to show that the petitioner will be prejudiced if he is forced to his remedy of appeal in event the trial court commits error.

Likewise the allegation in the petition that the petitioner was acting under the jurisdiction and by order of the Federal District Court when he sold the hay does not go to the question of the City Court's jurisdiction but is a matter of defense which could be raised in the criminal trial.

The counsel for the prevailing party in this case seem to have been acting throughout in their capacity as public officers—one as county attorney and on appeal to this court the attorney general. We do not think section 104-70-4, U. C. A. 1943 was intended to give attorneys paid a salary and acting in their official capacity attorney's fees.

. The order of the district court vacating the Alternative Writ of prohibition was correct. That part of the order allowing attorney's fees was improper. The order is modified to omit the allowance of attorney's fees and, as so modified, is affirmed.

McDONOUGH and WADE, JJ., concur.

LARSON and MOFFAT, JJ., dissenting.